# ROGER WALLACE MASON *v.* STATE OF MARYLAND

[No. 479, September Term, 1968.]

*Decided September 10, 1969.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*James S. McAuliffe* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County,* and *Andrew L. Sonner, Deputy State's Attorney for Montgomery County,* on the brief, for appellee.

ANDERSON, J., delivered the majority opinion of the Court. ORTH, J., dissents. Dissenting opinion by ORTH, J., at page 636 *infra.*

For having possessed a drug commonly known as "DMT," the appellant, Roger Wallace Mason, was convicted by a jury in the Circuit Court for Montgomery County of a violation of Maryland Code, Art. 27, § 122B,

entitled, "Drug known generally as LSD." He was sentenced to serve one year under the jurisdiction of the Department of Correction and to pay a fine of $500.

Upon this appeal the appellant presents numerous issues for our consideration. We need consider only one, namely: Whether there was sufficient evidence to sustain the conviction? We conclude that there was not sufficient evidence, and we vacate the judgment.

Maryland Code, Art. 27, § 122B provides in pertinent part:

> "* * * It is unlawful for any person to have in his possession, unless for purposes of scientific research, the drug or compound known generally as LSD. * * * The drug or compound herein referred to as 'LSD' means the drug or compound described as 'd-Lysergic acid diethylamide' or '7-methylindolo [4, 3-fg] quinoline-9-carboxylic acid,' and any other similar or comparable drug or compound."

The indictment charged that the appellant "unlawfully did possess the drug, generally known as DMT, which is an hallucinogenic drug similar to the drug generally known as LSD . . . ." The evidence at trial was that the appellant did, in fact, possess a drug generally known as DMT. However, the evidence did not establish that DMT was sufficiently "similar or comparable" to LSD to warrant conviction under the statute.

At trial Dr. Albert Sperling, an expert in analytical chemistry called by the State, provided the only testimony regarding the similarities of LSD and DMT. Dr. Sperling testified that DMT is a hallucinogenic drug chemically known as dimethyltryptamine, and that a hallucinogenic drug is one which "has a pharmacological activity which affects the brain." Dr. Sperling stated that LSD and DMT are similar in that both are hallucinogenic, and that the general effects of each are euphoria and a loss of contact with reality, although specific effects would vary from individual to individual. He stated that the two drugs differ in their physical properties—"color, ap-

pearance, melting point, solubility, [and] other criteria . . . ;" and that they differ also in amount of effective dosage and duration of effective dosage, LSD having a much smaller effective dosage and a much longer duration. He testified that with respect to molecular structure LSD and DMT are similar in that each contains an "indole ring," which consists of a certain five member chemical ring attached to a certain six member chemical ring.[1] The drugs differ in that "in LSD you have this ring, these two rings as a matter of fact, plus this side chain up here which you don't have in DMT."

Dr. Sperling testified that, "it [DMT] is partially similar [to LSD] and in other respects it isn't . . . . You couldn't say yes or no, it was or wasn't [similar] . . . . You have to say it is in some respects, it is similar and in other respects, it isn't." He was asked whether there are more dissimilarities than similarities between LSD and DMT, to which he replied "yes, there are." The question was slightly rephrased and repeated, and Dr. Sperling again affirmed that there are more dissimilarities than similarities between LSD and DMT.

The testimony of Dr. Sperling, in the absence of any other evidence on the point, was not sufficient for the State to carry its burden of proving that DMT is "similar to" LSD. To satisfy the statutory requirement of similarity, as that term is generally understood, requires a showing of a resemblance or comparability in many respects, a near correspondence, or a general likeness. See entries under "similar" in Black's Dictionary, Webster's Third New International Dictionary, and Words and Phrases (perm. ed. and 1969 cum. supp.). We will not consider the evidence at trial insufficient where it shows directly or supports a rational inference of the facts to be proved. But the facts must be shown or the inferences supported beyond a reasonable doubt and to a moral certainty. See *Williams v. State,* 5 Md. App. 450, 458 (1968). In our opinion Dr. Sperling's testimony, which consti-

---

1. Dr. Sperling stated that "innumerable" other drugs contain an indole ring, for example, tryptamine, which is an amino acid obtainable without a prescription.

tuted the only evidence of the required similarity of DMT to LSD, does not directly support a finding of similarity beyond a reasonable doubt and to a moral certainty; nor does it provide a sufficient basis upon which the jury could infer that the requisite similarity exists beyond a reasonable doubt and to a moral certainty.

There remains consideration of the disposition to be made of this case. See the opinion of the Court of Appeals in *Gray v. State,* 254 Md. 385. We are unable to determine from the record whether additional probative evidence of the alleged similarity of DMT to LSD can be produced by the State on a retrial. The relevant additional evidence would be technical in nature, and its availability may be determined easily in the lower court although it is impossible of determination in this Court upon the record alone. Upon remand, the State will bear the burden of demonstrating to the satisfaction of the lower court that it can produce additional probative evidence that DMT is similar to LSD. If the lower court is so satisfied, it shall hold a new trial of appellant; if that court is not so satisfied, it shall enter a judgment of acquittal. See *Gray v. State, supra.*

> *Judgment vacated; cause remanded with directions to the lower court to hold a new trial if the State within sixty days from the day upon which the mandate issues in this case, or within such reasonable extensions as the trial court may order in advance of the expiration thereof, satisfies that court that it can produce additional probative evidence, or to enter a judgment of acquittal if the State fails to so satisfy that court.*

ORTH, J., dissenting:

The appellant was convicted of having in his possession on 9 February 1968 the drug DMT. I do not believe that the laws of this State proscribed the possession of DMT at the time the appellant was alleged to have possessed it.

The status of the law on 9 February 1968 was that, with exceptions not here applicable, it was unlawful for any person to have in his possession a narcotic drug—Md. Code, Art. 27, § 277, a barbiturate—Art. 27, § 313C-(a) and Art. 43, § 285 (4), an amphetamine—Art. 27, § 313C(a), and LSD—Art. 27, § 122B(c). DMT does not fall within the definition of a narcotic drug, Art. 27, § 276(o) and is not a barbiturate or an amphetamine. Its possession was not specifically proscribed by any statute. However, by a provision of Chapter 657, Acts. 1967, codified as Art. 27, § 122B(c) the possession of "the drug or compound known generally as LSD" was unlawful. By subsection (f) of that section LSD was stated to mean "the drug or compound described as 'D-Lysergic acid diethylamide' or '7-methylindolo [4, 3-fg] quinoline-9-carboxylic acid' and any other similar or comparable drug or compound." Thus the possession of DMT was prohibited only if it is a drug or compound similar or comparable to LSD. I think it clear from the language of § 122B(f) that the terms "similar or comparable" refer only to chemical properties. That another drug or compound may be "similar or comparable" to LSD as to its effect—hallucinogenic; as to its physical properties—color, appearance, melting point and solubility, for example; or as to the amount and duration of effective dosage, would not make it "similar or comparable" within the frame of reference of the statute. DMT is dimethyle tryplamine. Its chemical formula is $C12H16N2$, and it is described as 3-2 dimethylamino-ethyle (indole). I think it patent that it does not derive from the same parent substance as LSD, is not chemically the same as LSD, and that its chemical properties are not similar or

comparable to LSD. I feel that the testimony of the only expert witness in the instant case, while it could have been more definitive, supports this conclusion. Therefore, although I agree that the judgment must be set aside because the evidence was not sufficient to support the conviction and thus the trial court erred in its denial of the motion for judgment of acquittal made at the close of all the evidence, I would remand with direction to enter a judgment of acquittal rather than vacate the judgment with the directions spelled out by the majority. I have no difficulty in determining that the State is not able to adduce probative evidence that LSD and DMT are "similar or comparable" within the statutory meaning of those terms because I think that in fact they are not. See *Gray v. State,* 254 Md. 385, Court of Appeals of Maryland.

I note that although, in my opinion, the possession of DMT was not proscribed at the time of the commission of the offense here, its possession is now unlawful. Chapter 519, Acts 1968, effective 1 July 1968, repealed former § 313B of Art. 27 dealing with the manufacture and sale of amphetamines and enacted a new § 313B. New § 313B(d) proscribes the possession of any depressant or stimulant drug. By the definition set out in subsection (a)(5)(iv) a "depressant or stimulant drug" means "any drug containing any quantity of any substance designated under the provisions of the Federal Drug Act as having potential for abuse to its hallucinogenic effect or its depressant or stimulant effect on the central nervous system; but shall not mean any narcotic drug as defined by § 276 of Article 27 of this Code." It is my understanding that DMT was on 1 July 1968 and is now a controlled drug under the Federal Drug Act.