# ARTHUR LEROY MIDDLETON, JR. *v.* STATE OF MARYLAND

[No. 276, September Term, 1969.]

*Decided July 16, 1970.*

20

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Frank Sacks* for appellant.

*Francis X. Pugh, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *I. Elliott Goldberg, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was convicted at a court trial of (1) breaking the storehouse of Charles Wagner (the Arcade Pharmacy) on August 15, 1967 and stealing therefrom goods of a value of $5.00 or more and grand larceny of such goods; (2) armed robbery of Raymond Morstein (the Ansell Pharmacy) on March 4, 1968; (3) possession and control of prohibited narcotic drugs on March 6, 1968, and (4) unlawfully carrying a gun on March 6, 1968 in a motor vehicle in violation of Baltimore City Ordinance. He was sentenced to ten years on the storehousebreaking charge and to fifteen years consecutive on the armed robbery conviction. Sentence was suspended on the other offenses. On appeal, it is contended—as to the armed robbery and storehousebreaking and stealing convictions—that evidence was unlawfully seized in violation of the Fourth Amendment to the Federal Constitution and improperly introduced over appellant's objection at the trial. Appellant also contends that the evidence was legally insufficient to support any of the convictions.

Evidence was adduced at the hearing on appellant's pretrial motion to suppress which showed that at 1:17 a.m. on August 23, 1967, in Wilmington, Delaware, Patrolman Edward Carter received a call to investigate a burglary in progress at a restaurant in an "all Negro" area of the City. Upon arrival at the scene, Carter observed a car bearing Maryland license plates parked at the curb in front of the restaurant. It appeared to be unoccupied. Carter's investigation at the restaurant indicated that no burglary had been committed. As he was leaving the area he observed "movement" in the parked car and saw a white person "sit up" in the vehicle. Upon Carter's request, the person in the car identified himself by name as the appellant. Carter "glanced" through the open window of the vehicle and observed a gun butt protruding from the ashtray on the dashboard. He told appellant to get out of the car; appellant grabbed the gun, put his finger on the trigger and pointed it toward the officer. Carter drew his own gun. Appellant then submitted to arrest and gave the officer his gun, which was fully loaded. Two police sergeants responded to the scene to assist Carter and when they told appellant they were going to search his car for other weapons, he "dove" back into the vehicle and attempted to lock the doors. It was necessary to physically restrain appellant and he was thereafter handcuffed. At this time, a scream was heard to emanate from around the corner and all of the officers except Carter went to investigate.[1] Upon their return some twenty minutes later, appellant's car was removed to the police station two blocks away where it was immediately searched. A fully loaded gun, ammunition, and a dagger were found secreted in the vehicle, together with a number of items which, when described over the police teletype network, Baltimore City Police reported had been stolen from the Arcade Pharmacy on August 15, 1967.

Detective Joseph Folio of the Baltimore City Police Department obtained a warrant for appellant's arrest on

---

1. A murder had been committed. Appellant was in no way connected with it.

August 23, 1967 and filed a detainer with the Wilmington authorities. Appellant was released on bail for the Wilmington offense on February 23, 1968, the bail having been provided by Mrs. Geneva Woods of Baltimore in the form of a property bond pledging her Baltimore home as security. The Baltimore police were not notified of appellant's release.

On March 4, 1968, Mrs. Woods contacted Detective Folio and informed him that appellant and James Galliard were staying at her home in Baltimore; that appellant was renting the basement apartment from her; and that he and Galliard had loaded guns and were driving a stolen 1968 white Plymouth bearing South Carolina license plates, the tag number of which she specified. Mrs. Woods told Folio that she was angry with appellant and wanted him arrested because she was fearful that he would jump his Wilmington bail. Folio immediately contacted the South Carolina police and was informed that the car had been rented by one Edward Fainberg, but not returned, and that there was a warrant outstanding for Fainberg's arrest. Folio obtained a copy of the warrant on March 5. Investigation revealed that Fainberg's credit card, which was used to rent the car, had been stolen in a burglary of Fainberg's Pharmacy in Baltimore.

During appellant's absence from her home on March 5, Mrs. Woods took Folio into appellant's basement apartment, and showed him two loaded guns in one of his suitcases. She refused to permit Folio to take the guns at that time.

A police stake-out of the Woods home was thereafter initiated. At approximately 8:00 p.m. on March 6, the police observed a 1968 white Plymouth containing two male subjects, believed to be appellant and Galliard, stop in the alley in the rear of the Woods home and enter the house. As the police began to converge on the house, the men came out, saw the officers, and then ran back into the house. By this time, twenty-five officers had arrived on the scene and the Woods house was flooded by searchlights. The officers observed a light go on in the

second floor bedroom of the house. They observed the curtains being pulled back and someone peek out. It appeared to the officers that two men were in the room and that one of them was standing on something. The police ordered that the men surrender. With hands up, appellant and Galliard emerged from the house and submitted to arrest. Investigation revealed that there were no other males in the Woods house.

Immediately after appellant and Galliard had been removed to police headquarters, the officers undertook a search of the stolen Plymouth in the alley. The search uncovered a number of loaded weapons and other items, including narcotics and narcotic paraphernalia, which had been taken during a robbery at the Ansell Pharmacy on March 4, 1968. Also found in the car were various credit cards belonging to Edward Fainberg, personal papers addressed to appellant, and a key to a room at the New Motel in Baltimore. The Woods home was also promptly searched. One of the officers who had observed the prearrest activity in the second floor bedroom went to that room and noted that the "something" he had seen one of the men standing on was a bed. Searching the area, the officer discovered two loaded guns in the bedroom's attic rafters. Another officer found a set of car keys belonging to the stolen Plymouth secreted in a chair located on the first floor of the Woods home. Folio went to appellant's basement apartment and seized the suitcase containing the loaded guns.

Mrs. Woods testified on appellant's behalf at the hearing on the motion to suppress. She stated that she did not give police permission to search her house following appellant's arrest and that they did so over her objection. She testified that she observed Galliard hiding things on the second floor on March 6; that it was she, and not appellant or Galliard, who stood on the bed and hid one gun in the rafters, and that this was a gun she had taken from appellant. She stated that appellant was permitted access to the kitchen and first floor of her house, but not the second floor bedrooms. Mrs. Woods admitted that appellant was her boyfriend.

:. Appellant testified at the hearing on his motion to suppress and denied arriving at the Woods home in the stolen Plymouth; he denied any and all connection with the stolen Plymouth, or with the articles found therein. He denied that his suitcases contained guns; he also denied giving Mrs. Woods the gun which she claimed she hid for him on March 6.

Folio testified that Mrs. Woods ordered the police from her house after the search was made and not before. He did not think a search warrant necessary because Mrs. Woods had herself initiated the investigation as she wanted appellant apprehended.

### The Legality of the Car Search in Wilmington

: During trial appellant conceded that the Wilmington police had probable cause to arrest him for a misdemeanor committed in their presence. He further conceded at trial that the police could have made a warrantless search of his car at the scene of the arrest. But since they did not, he claimed on authority of *Preston v. United States,* 376 U. S. 364, that the search of his vehicle without a search warrant made thirty minutes later at the police station was not contemporaneous with the arrest either in time or place and, consequently, was not valid as being incident to the arrest. The trial judge held in effect that the circumstances were such that the search was substantially contemporaneous with the arrest and was lawful as incident to it. Appellant advances the same argument on appeal as he did below, although he now suggests that the arrest may have been unlawful. We think the appellant is bound by his trial concession that the arrest was lawful under Delaware law and we proceed to a determination of the validity of the car search on this foundation.

We have held that while ordinarily a search of a motor vehicle can be incident to arrest only if it is made substantially contemporaneous therewith, and is confined to the immediate vicinity of the arrest, in some circumstances a search may be deemed incident to an arrest, al-

though not conducted at the scene thereof, when it is made with reasonable promptness at a police station to which the vehicle is removed immediately following the arrest. *See Sutton v. State,* 8 Md. App. 285; *Tierney v. State,* 7 Md. App. 56; *Cornish v. State,* 6 Md. App. 167; *Reagan v. State,* 4 Md. App. 590; *Anthony v. State,* 3 Md. App. 129; *Lewis v. State,* 2 Md. App. 678. Whether the search in this case was lawful on the ground that it was incident to the arrest is placed in doubt by the recent ruling of the Supreme Court in *Chambers v. Maroney,* U. S. , 7 CrL 3133, decided June 22, 1970. In that case, the court stated that the question before it "concerns the admissibility of evidence seized from an automobile, in which petitioner was riding at the time of his arrest, after the automobile was taken to a police station and was there thoroughly searched without a warrant." The evidence showed that a gasoline station attendant was held up at night and robbed. The robbers, four in number, were observed by eyewitnesses to flee the scene in a blue station wagon. A detailed description of the clothing worn by the robbers and of their car was immediately broadcast by police radio. Within an hour, a car answering the description and containing four men was stopped by the police in a dark parking lot two miles from the robbery scene. The men were arrested and their car driven to a police station where it was promptly searched without a warrant and incriminating evidence was found therein. While finding that the arrest was lawful, the court held that the search of the car was not contemporaneous with the arrest and, under *Preston v. United States, supra,* could not be justified as an incident of the arrest because it was made, not at the scene of the arrest, but at the police station after the robbers were safely in custody. The court held the search of the vehicle was nevertheless lawful under *Carroll v. United States,* 267 U. S. 132. In that case, the court held that automobiles and other conveyances may be searched without a warrant in circumstances which would not justify the warrantless search of a house or an office, provided there is probable cause

to believe that the vehicle contains articles that the police are entitled to seize. Under the *Carroll* doctrine, the search of an automobile on probable cause proceeds on a theory wholly different from that justifying a search incident to an arrest, *viz.*, the right to search and the validity of the seizure are not dependent on the right to arrest; rather they are dependent on the reasonable cause the seizing officer has for belief that the contents of the vehicle offend against the law. The court in *Chambers* recognized that the circumstances which furnish probable cause to search any particular automobile for particular articles are usually unforeseeable and the opportunity to search is "fleeting," since a car is readily movable. Where this is true, the court stated: "* * * if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." The court observed that it was not unreasonable in the case before it for the police to take the defendant's car to the police station since it was then in the middle of the night, and "A careful search at that point was impractical and perhaps not safe for the officers, and it would serve the owner's convenience and the safety of his car to have the vehicle and the keys together at the station house." It was against this background that the court enunciated its conclusion:

> "* * * For constitutional purposes we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.
>
> "On the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a

search. The probable cause factor still obtained at the station house and so did the mobility of the car unless the Fourth Amendment permits a warrantless seizure of the car and the denial of its use to anyone until a warrant is secured. In that event there is little to choose in terms of practical consequences between an immediate search without a warrant and the car's immobilization until a warrant is obtained. * * *"

We have applied the *Carroll* doctrine to warrantless vehicle searches in a number of cases decided prior to *Chambers*. *See Johnson v. State,* 9 Md. App. 166; *Owings v. State,* 8 Md. App. 572; *Cook v. State,* 8 Md. App. 243; *Sutton v. State, supra; Johnson v. State,* 8 Md. App. 28; *Cornish v. State, supra; Sweeting v. State,* 5 Md. App. 623. We think the doctrine clearly applicable to the facts of the present case. We hold, in light of *Chambers,* that the search of appellant's car—if not properly incident to his arrest—was made on probable cause in the constitutional sense to believe that it contained other weapons which the police were entitled to seize. In so concluding, we note especially footnote 8 in *Chambers* wherein the Supreme Court held that nothing in *Chimel v. California,* 395 U. S. 752, modified or affected the rationale of *Carroll.*

### The Storehousebreaking and Stealing Conviction

In convicting appellant of breaking into the Arcade Pharmacy and stealing goods of a value of $5.00 or more, the judgment of the trial court was not clearly erroneous. A number of items of a value in excess of $5.00 stolen from the pharmacy were found in a car occupied by and registered to appellant some eight days after the crime. Appellant did not undertake to explain his possession of these items. We hold that such possession, being recent, exclusive, and unexplained, gives rise to an inference of fact sufficiently strong to show that appellant was the person who broke the storehouse and stole the goods. *See Brown v. State,* 8 Md. App. 224; *Jones v. State,* 5 Md.

App. 180. It was, however, improper for the trial judge to convict appellant of grand larceny of the same goods, and the State so concedes. *See Tucker v. State,* 237 Md. 422; *Tender v. State,* 2 Md. App. 692.

### The Armed Robbery Conviction

Appellant and Galliard were positively identified in court by an employee of the Ansell Pharmacy as the robbers. A customer made a less positive in-court identification of appellant as one of the holdup men. A number of items seized from the stolen South Carolina Plymouth on March 6 were shown to have been stolen from the pharmacy during the robbery two days earlier on March 4. Personal papers and items belonging to or connected with appellant were also found in the car. There was evidence showing that the South Carolina car was driven to the Woods home by two men who parked it in the alley immediately behind the house in such a manner that other cars could not pass through the alley. The evidence showed that the men entered the Woods home from the rear and soon thereafter came back out, started to approach the South Carolina car, saw the police, and hurriedly re-entered the house. The only two men in the house—appellant and Galliard—thereafter surrendered to police. A set of keys was found in a chair on the first floor of the house which fit the stolen car, and two guns were found in the area of the bedroom rafters where police earlier observed the men in the act of secreting some objects. It was upon this evidentiary foundation that the trial court found appellant guilty of armed robbery. We think it obvious from this evidence that the court's judgment was not clearly erroneous under Maryland Rule 1086.

But appellant claims that the car keys and guns seized from the rafters within the Woods home after his arrest were improperly admitted in evidence because the search was conducted without a warrant.[2] The trial judge found the search of the Woods home lawful as incident to ap-

---

2. The guns seized from the suitcase in appellant's basement apartment were suppressed as evidence by the trial judge.

pellant's valid arrest made outside the house. We do not think the search can be justified on this basis. In *Vale v. Louisiana,*      U. S.     , 7 CrL 3130, decided June 22, 1970, the Supreme Court held that a search may be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the *immediate* vicinity of the arrest. After stating that this principle was well established prior to its 1969 holding in *Chimel v. California, supra,*[3] it held:

> "* * * If a search of a house is to be upheld as incident to an arrest, that arrest must take place *inside* the house, *cf Agnello v. United States,* 269 U. S. 20, 32, not somewhere outside — whether two blocks away, *James v. Louisiana,* 382 U. S. 36, twenty feet away, *Shipley v. California,* 395 U. S. 818, or on the sidewalk near the front steps. 'Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant.' *Agnello v. United States, supra,* at 33. That basic rule 'has never been questioned in this Court.' *Stoner v. California,* 376 U. S. 483, at 478, n. 5."

*Vale* would appear to allow some leeway, *albeit* slight, for a post-arrest warrantless search of the arrestee's dwelling where based on truly exigent or emergency circumstances. But we see no need to explore that avenue under the facts of this case. That the police may have had no right to enter and search appellant's dwelling, *i.e.,* his basement apartment, without a search warrant after his arrest does not mean that evidence obtained by police investigation from other areas of the Woods home immediately after his arrest is automatically to be suppressed. As to the guns found in the rafters on the second floor,

---

**3.** In *Chimel,* the court held that when the search of a dwelling is sought to be justified as incident to a lawful arrest, it must constitutionally be confined to the area within the arrestee's reach at the time of his arrest—*viz.,* the area from within which he might gain possession of a weapon or destructible evidence. *Chimel* is not retroactive. *Scott v. State,* 7 Md. App. 505.

all the evidence in the case showed that appellant was not permitted access to this part of the house; he was thus a trespasser when, as the lower court expressly found, the guns were there hidden either by him or Galliard. Appellant would have no standing under these circumstances to object to the seizure of these weapons and their admission in evidence was not violative of his Fourth Amendment rights. See Jason v. State, 9 Md. App. 102; Walters v. State, 8 Md. App. 583. Moreover, even if it was error to admit the guns in evidence, the error was obviously harmless beyond a reasonable doubt—the guns added virtually nothing to the State's strong evidence of appellant's participation in the armed robbery. For the same reason, we think the admission in evidence of the car keys seized from a chair on the first floor of the house —an area to which appellant was apparently permitted access by Mrs. Woods—if error, was also harmless beyond a reasonable doubt. Appellant's connection with the car, as shown by the other evidence in the case, was plain and clear; the keys added little of real substance to it.[4] Of course, that the admission of evidence claimed to have been seized in violation of the Fourth Amendment may constitutionally be found harmless beyond a reasonable doubt is no longer open to question. See Chambers v. Maroney, supra; Harrington v. California, 395 U. S. 250; Richardson v. State, 7 Md. App. 334.

Appellant does not question the legality of the search of the stolen South Carolina Plymouth made in the alley immediately following his arrest. The lower court found the search lawful as incident to a valid arrest on the outstanding burglary warrant. Even though appellant was removed to police headquarters before the search was undertaken, and was thus safely in custody, under Lewis v. State, supra, the search could be deemed incident to the arrest. But even if not, we think under the circumstances

---

4. The evidence was conflicting as to whether Mrs. Woods gave the police permission to search her house following appellant's arrest. The court did not pass upon the question.

it could be justified under the probable cause to search doctrine of *Carroll v. United States, supra,* as revitalized and extended in *Chambers v. Maroney, supra.*[5]

### *The Narcotics and Weapons Convictions*

These convictions were predicated on finding prohibited narcotics and weapons carried in violation of a City Ordinance in the South Carolina vehicle on March 6. As appellant was shown by the evidence to be, at the least, in joint exclusive possession of the vehicle with Galliard, we cannot say that the trial judge was clearly erroneous in finding appellant guilty of these offenses. *See Davis v. State,* 7 Md. App. 667; *Boswell v. State,* 5 Md. App. 571.

> *Judgments affirmed, except as to the fifth count of indictment 1696 (larceny), as to which judgment is vacated as having merged with the third count of said indictment (storehousebreaking and stealing).*

---

5. Appellant's trial tactics, carried over on appeal, were to disavow any and all connection with the South Carolina car; it was apparently for this reason that he declined to attack the legality of the search of that vehicle. But see *Jones v. United States,* 362 U. S. 257.