JULES MELCHOIR LAMBIOTTE, JR. *v.* STATE
OF MARYLAND

[No. 681, September Term, 1972.]

*Decided April 13, 1973.*

The cause was argued before ORTH, C. J., and MENCHINE and SCANLAN, JJ.

*Robert Anthony Jacques* for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Thomas L. Craven, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

SCANLAN, J., delivered the opinion of the Court.

Following a jury trial in the Circuit Court for Montgomery County before Judge H. Ralph Miller, the appellant, Jules Melchoir Lambiotte, Jr., was convicted on the

first two counts of a three-count indictment. He was found guilty of (1) storehouse breaking and stealing goods of the value of $5.00, and (2) storehouse breaking with intent to steal goods over the value of $100.00. Appellant was acquitted under a third count charging him with grand larceny. Judge Miller imposed a general sentence of five years covering both convictions. He then suspended the sentence, placed the appellant on supervised probation for a period of four years and ordered him to undergo psychiatric treatment at his own expense.

Appellant raised a number of objections to the proceedings in the trial court and again presses those contentions on his appeal. One of these is his claim that the trial court erred in permitting the State to argue, and the jury to consider, that the appellant's possession of two checks allegedly stolen from premises which were broken into raises the inference that the appellant was the thief who took office equipment stolen from those same premises at the time of the break-in.

For reasons to be stated, we find that the inference which usually arises from the possession of recently stolen property was not established on the facts of this case, in that the State did not present sufficient evidence to show that the checks had been taken at the same time the office equipment was stolen. We, therefore, reverse and remand the case for a new trial. Accordingly, we do not consider the remaining contentions raised by the appellant.[1]

## THE FACTS

Hope's Windows is an affiliate of Roblin-Hope's Industries, Inc., of Buffalo, New York. The local office is

---

1. Besides disputing application of the inference arising from the possession of recently stolen property, the appellant argues: (a) that there was a merger of counts one and two; (b) that the Court of Appeals exceeded its statutory and constitutional authority in reducing the number of peremptory challenges; (c) that the appellant was entitled to individual *voir dire* examination of the proposed jurors; and (d) that the trial judge abused discretion in denying appellant's counsel permission to examine the entire presentence investigation report.

located at 11900 Tech Road, Silver Spring, Maryland. At trial, F. Philip Trusso, the district manager of Hope's Windows, testified that he locked the Silver Spring premises at approximately 5:00 p.m., Friday, November 26, 1971. When he returned to work the next Monday morning, November 29, 1971, he was advised by one of his employees that certain office equipment in the main office was missing. Trusso then discovered that a pane of the window in his office had been broken. When he left work on Friday, the window glass was in place. The evidence also showed that the burglars had gained access to the main office through the door between that office and Trusso's.

The office equipment stolen from Hope's Windows included two electric typewriters, one calculator, two transcribers, three dictating machines, one electric adding machine and one manual adding machine. Collectively, the equipment had a value of approximately $4100.00.

Trusso identified the appellant as a person who had worked for Hope's Windows for five or six months. This period of employment ended on June 3, 1971, over five months before the theft. During his employment at Hope's Windows, the appellant assembled windows in the warehouse and outdoors. The warehouse is located upstairs above the district manager's office.

The checkbook from which employees' payroll checks are made up was kept in a desk drawer in the district manager's office. Trusso and one other employee, a Mr. Winfield, had authority to sign checks for Hope's Windows. During the course of Mr. Trusso's direct examination, the following occurred:

"MR. CRAVEN:     Where were the checks kept from out of which these employees were paid?

"MR. JACQUES:    Objection.

"THE COURT:      Overruled.

"THE WITNESS:     My desk drawer.

"BY MR. CRAVEN:

Q    *And when was that checkbook taken out by anyone, if you know?*

"MR. JACQUES:     Objection, Your Honor.

"BY MR. CRAVEN:

Q    *I mean in the course of your business?*

"THE COURT:     Overruled.

"THE WITNESS:     It happened on the weekend after the Friday.

"MR. CRAVEN:     *I withdraw the question,* and I will ask another question.

"THE COURT:     All right." (Emphasis added.) [2]

Subsequently, Mr. Trusso testified that the checkbook was in his desk the last time he was in his office before the theft. Trusso then testified that the fact that 12 checks and their accompanying check stubs were missing from the checkbook was not discovered until the Wednesday following the break-in. The following then ensued:

"BY MR. CRAVEN:

Q    And how far, up to what numbered check did that book go at that time, if you know?

"MR. JACQUES:     Objection, Your Honor.

"THE COURT:     Overruled.

---

2. In its brief, the State relies on the above stated excerpt from the transcript for the assertion that "the witness indicated that he normally kept the checkbook in his desk drawer, *but that it had been removed during the weekend that the burglary occurred.*" T.48-49 (emphasis added). The record reference does not contain testimony tending to prove that the checkbook had been removed during the weekend that the burglary occurred. With the withdrawal of the question, the non-responsive answer was also eliminated from the record.

"THE WITNESS: Well, that particular checkbook goes to eleven hundred and thirty-two.

"BY MR. CRAVEN:

Q And did there come a time when you noticed something unusual about that checkbook?

"MR. JACQUES: Objection, Your Honor.

"THE COURT: Overruled.

"THE WITNESS: Yes, since we order our checkbooks ahead of time, on Wednesday morning, that is two days after the robbery, we were aware of the robbery, and I asked Mrs. Morrison to check the new checkbook to be taken out to make certain that the number— the sequences were identical so we would have no gap from one checkbook to the other, and at that point she came back to me and said—

"MR. JACQUES: Objection.

"BY MR. CRAVEN:

Q Don't tell us what she said. What did you observe if anything about the new book and the old book?

"MR. JACQUES: Objection, Your Honor. The new book is irrele-

"THE COURT:  vant to these proceedings.

Objection sustained. I mean, just go ahead and get right down to what you are after. Objection sustained.

"MR. CRAVEN:  If Your Honor please, I have a proffer as to the relevancy.

"THE COURT:  Come up to the bench and make it.

(Whereupon, a discussion was held at the bench outside the hearing of the jury as follows:)

"THE COURT:  Why don't you just ask him did anything happen to the checkbook during the break-in; what happened to it?

"MR. CRAVEN:  I think that the numbers on these show that certain checks were missing.

"THE COURT:  Well, ask him if after the break-in if he checked his checkbook; were there any checks missing. Why go ahead in this way? You can object all you want, Mr. Jacques. All right. You got a right to object to any question.

(Whereupon, a discussion held at the bench

outside the hearing of the jury was concluded.)

"BY MR. CRAVEN:

Q   Mr. Trusso, after the break-in at Hope's Windows, what if anything unusual did you notice about the checks that had been in y o u r drawer?

"MR. JACQUES:   Objection, Your Honor.

"THE COURT:   Overruled.

"THE WITNESS:   We had assumed that the checkbook was incomplete because the checks ended at eleven twenty, and the new checks started at eleven thirty three, so we immediately contacted the bank and wondered why this had occurred because I would have to explain to our home office the difference between eleven twenty and eleven thirty-three, and we more less accused the bank that they had sent us a checkbook that was incomplete. *It never dawned on us that twelve checks had been taken out.*

"BY MR. CRAVEN:

Q   I show you Exhibit 2 and 3 and ask you if you recognize those?

"MR. JACQUES: Objection.

"THE COURT: Overruled.

"THE WITNESS: I r e c o g n i z e these checks because they were shown to me by I believe it was the bank at the time they were t r y i n g to v e r i f y whether that signature

"BY MR. CRAVEN:

Q *I see. If you know, where were those two checks prior to your place of business being broken into?*

"MR. JACQUES: Objection, Your Honor.

"THE COURT: Overruled. *If you know.*

"THE WITNESS: *I can only assume that they were in the check-book.*

"MR. JACQUES: Your Honor, I move that the answer be striken.

"THE COURT: *The jury will disregard that.*

"BY MR. CRAVEN:

Q What was the highest number in that check-book when you first saw it after the break-in?

"MR. JACQUES: Objection, Your Honor.

"THE COURT: Overruled.

"THE WITNESS: Probably about — I'm just guessing; about eleven ten.

"BY MR. CRAVEN:

    Q  Well, don't guess, do you remember.

"MR. JACQUES:  Objection. Move it be striken.

"THE WITNESS:  *No, I don't remember.*

"THE COURT:  *The jury will disregard that. The witness is not permitted to guess."*

(Emphasis added.)

Two bank teller clerks, one from the Eastover branch and the other from the Suitland branch of the Suburban Trust Company bank, testified that on the day following the break-in, a man fitting the appellant's description had cashed two checks at their respective branches. Both checks were made payable to the appellant and were drawn on Hope's Windows. Through the testimony of an agent of the Federal Bureau of Investigation, the State showed that the appellant had forged the signature of the drawer on the two checks.

A detective sergeant of the Montgomery County Police Department testified for the prosecution. He stated that he had interviewed the appellant and that the latter, after having been advised of his *Miranda* rights, stated "that it was a stupid trick . . . ." On cross examination, this police officer testified that when the appellant said "that it was a stupid trick," he was referring to the check cashing episodes. The witness continued: "I never . . . got to question him regarding the burglary, but he never did make a statement regarding the burglary."

After the State rested, the appellant moved for a judgment of acquittal, which was denied. The appellant offered no evidence, rested and renewed his motion. Once more, it was denied. One of the grounds assigned in support of the motion was the improper application of the inference that, because on the day following a break-in theft of office machinery appellant was found in pos-

session of checks taken from Hope's Windows, it may be inferred that he was the thief who broke in and stole office equipment from the same premises.

IT WAS ERROR TO HAVE PERMITTED THE STATE TO ARGUE AND THE JURY TO CONSIDER THAT APPELLANT'S POSSESSION OF THE CHECKS RAISED AN INFERENCE THAT HE WAS THE THIEF WHO STOLE THE OFFICE MACHINERY

Throughout the proceedings below the State maintained that the appellant's possession of two checks taken from Hope's Windows was sufficient to raise the inference that he was the burglar who broke in and stole the office equipment from the same place. The trial court agreed with that position and specifically instructed the jury "that the possession of recently stolen goods by the defendant may give rise to the inference of fact that the possessor was the thief and may also give rise [to] and support an inference that the possessor of recently stolen goods was a principal in the breaking of the storehouse."

From the beginning to the end of the trial, the appellant objected to any application of the inference arising from the possession of recently stolen property. The precise grounds on which appellant relied in arguing against applicability of the inference were two. First, he claimed that before the inference can be drawn it must be alleged in the indictment that the goods found in the appellant's possession were stolen, and no such allegation was set forth in the indictment. Secondly, the appellant maintained that his constitutional right not to incriminate himself was violated, in that in order to explain how he came into possession of the checks he would be forced to incriminate himself on charges of forging and uttering the two checks which he passed in Prince George's County the day after the robbery at Hope's Windows. We find no merit in these two arguments.

Whatever the rule in other jurisdictions,[3] it is settled in Maryland that the exclusive possession of recently stolen property "permits the drawing of an inference of fact strong enough to sustain a conviction that the possessor was the thief, or, if the circumstances revealed by the testimony so indicate, that he was the receiver of stolen goods." *Anglin v. State,* 244 Md. 652, 656, 224 A. 2d 668 (1966), *cert. denied* 386 U. S. 947 (1967). This Court frequently has applied the rule that a person found in possession of property recently stolen in a burglary may be inferred to be the burglar. *Middleton v. State,* 10 Md. App. 18, 27, 267 A. 2d 759 (1970) ; *Burkett v. State,* 5 Md. App. 211, 217, 218, 245 A. 2d 911 (1968) ; *Allen v. State,* 2 Md. App. 740, 745, 237 A. 2d 90 (1968). Therefore, if the State had shown that the two checks which the appellant cashed were stolen at the time Hope's Windows was broken into and office equipment taken, we would have no hesitancy in again applying the rule that appellant's exclusive possession of stolen property soon after it had been stolen was *prima facie* evidence of guilt and cast upon him the burden of explaining such possession, and if unexplained, would be sufficient in itself to sustain his conviction for storehouse breaking and stealing. *Boswell v. State, supra* at 576. In such a case, the fact that the indictment failed to allege that checks as well as office machinery had been stolen would be of no consequence. *Mason v. State,* 321 S.W.2d 591, 593 (Tex. Crim. App. 1959).

Similarly, there is no substance to the appellant's contention that requiring him to rebut the inference of

3. The more general rule seems to be that the possession of stolen property by the defendant soon after the commission of the alleged crime "is merely an evidentiary fact tending to establish guilt which should be submitted to the jury, to be considered in connection with all the other facts and circumstances disclosed by the evidence." 50 Am. Jur. 2d 345, n. 20 (1970), and *see* the cases cited therein. As stated in the body of this opinion, Maryland holds that exclusive possession of stolen property soon after it has been stolen is *prima facie* evidence of guilt and throws on the possessor the burden of explaining his possession, and, when unexplained, suffices to support a conviction. *Boswell v. State,* 5 Md. App. 571, 249 A. 2d 490 (1968). See *Felkner v. State,* 218 Md. 300, 305, 146 A. 2d 424 (1958).

fact which arises by virtue of his possession of recently stolen property transgresses upon his constitutional right not to incriminate himself. That very issue was presented and disposed of in *Anglin v. State, supra.* Speaking through Chief Judge Hammond, the Court of Appeals upheld the constitutionality of the rule which permits the factual inference of guilt to be drawn from the possession of recently stolen property. *Id.* at 658-663; and *see Yee Hem v. United States,* 268 U. S. 178 (1925) ; *United States v. Gainey,* 380 U. S. 63 (1965) ; *State v. Young,* 217 So. 2d 567, 571 (Fla. 1968). Indeed, appellant's argument that the inference of fact which arises from the possession of recently stolen property impairs self-incrimination rights—if logically projected —would require the conclusion that the State should not be permitted to produce any evidence creating an inference of fact unfavorable to an accused, for, in such circumstances, he would be theoretically exposed to a Hobson's choice of either testifying in order to rebut the inference or of remaining silent and standing convicted on the basis of the inference drawn from such evidence. *Anglin v. State, supra* at 663.

Thus, the two specific grounds on which the appellant relied in the court below and on this appeal in arguing against application of the inference or presumption of fact ordinarily drawn from the possession of recently stolen property do not, in themselves, supply a basis for finding error on the part of the trial court. However, the record reveals another basis for disallowing invocation and application in this case of the inference which generally arises from possession of recently stolen property.

A careful review of the record reveals that the evidence was legally insufficient to show, that the two checks which appellant cashed in Prince George's County were stolen in the same storehouse breaking in which the office equipment was taken from Hope's Windows. It is true that under the circumstances of this case, it could be argued that Rule 1085 permits us to ignore

this particular point, since it was not tried and decided by the lower court. Additionally, that precise claim was not set out in the brief which appellant filed in this Court. Under Rule 1031 c (2), therefore, we could ignore it as having been waived. *Harmon v. State Roads Commission*, 242 Md. 24, 217 A. 2d 513 (1966) ; *Hyde v. State*, 228 Md. 209, 179 A. 2d 421 (1962), *cert. denied* 372 U. S. 945 (1963). Moreover, while the appellant may have assigned the wrong grounds in his challenge to application in this case of the inference arising from possession of recently stolen property, nevertheless, his basic attack is on the sufficiency of the evidence on the basis of which he was convicted. Under these circumstances, in the light of the motion for judgment of acquittal, if the record reveals, and we believe it does, that the evidence was insufficient to sustain appellant's conviction, it would be improper for this Court to let that conviction stand, despite appellant's failure to articulate precisely the critical point on which his case turns.

The record substantiates the appellant's assertion that the "basis of the State's case and the only evidence against the Appellant appears to be his possession and uttering of two checks" drawn on Hope's Windows and cashed by him on the Monday morning following the break-in.[4] Since it was unrebutted, this evidence is sufficient to support the inference that the appellant was in possession of checks stolen or improperly appropriated from Hope's Windows. However, by itself, such evidence does not permit a second inference, *i.e.*, that the checks were stolen during the storehouse breaking of which the appellant has been convicted.

Mr. Trusso, the district manager, testified that the two checks were among 12 checks which he discovered

---

4. There was testimony about a partial tire track left by a small compact car or truck which the police found inside of the burglarized premises. There also was testimony that the appellant owned or operated a Volkswagen. However, the trial court properly instructed the jury to disregard all of this testimony since it was "so highly speculative and of such guess work that you ought to get that completely out of your minds."

to be missing from the checkbook two days after discovery of the break-in. He was unable to testify, however, whether or not the two checks were in the checkbook prior to the break-in. He said that: "I can only assume they were in the checkbook." That answer was properly stricken by the trial judge upon timely objection to it made by appellant's counsel. Apparently, all of the property stolen in the break-in consisted of items of office machinery. These items were recovered by the police, although no evidence was offered to explain the circumstances under which the police were able to retrieve these items or when or where they were found. There was no testimony as to whether the desk drawer in which the checkbook was kept was locked or unlocked, either prior to, during or after the break-in. Nor was there testimony that the district manager's desk was broken into or otherwise disturbed when the premises at Hope's Windows were burglarized and the office equipment stolen. The record is also devoid of evidence to establish at what particular point in time prior to the break-in the two checks which the appellant cashed were part of the checkbook. Such a paucity of evidence is not sufficient to carry the State's burden of making out a *prima facie* case of the criminal agency of the appellant by showing that the two checks were stolen in the storehouse breaking in which the office machinery was stolen.

The test of the sufficiency of evidence in a jury case is whether there was any relevant evidence which would properly have sustained the conviction. *Spencer v. State,* 1 Md. App. 264, 267, 229 A. 2d 151 (1967) ; *Mason v. State,* 7 Md. App. 632, 635, 256 A. 2d 773 (1969). As we said in *Spencer v. State, supra,* quoting from *Johnson v. State,* 227 Md. 159, 163, 175 A. 2d 580 (1961) :

> " 'In every criminal case, evidence, to meet the test of legal sufficiency, must show directly, or support a rational inference of, the facts required to be proved; and the facts must be

established, or the inference supported, beyond a reasonable doubt or to a moral certainty, or a reasonable doubt of an opposite fact must be created.' "

There is no question but that the inference of fact arising from possession of recently stolen property, if unrebutted or unexplained, may be sufficient evidence on which to sustain a conviction, provided that the State has made a *prima facie* case of showing the property in the defendant's possession was taken in the burglary, larceny or theft with which he is charged. *Boswell v. State, supra.* All of the cases cited by the State in its brief are cases where the stolen property was shown to be property which had been taken in the burglary or larceny for which the defendant was convicted. Thus, in *Hyman v. State,* 4 Md. App. 636, 244 A. 2d 616 (1968), the defendant was arrested with a gun in his possession and the gun was identified as one taken in the burglary for which he was charged. In *Burkett v. State, supra,* the defendant was found in possession and admitted ownership of tools which the F.B.I. previously had identified as being used in the burglary charged against him. Again, in *Middleton v. State, supra,* the defendant was found in possession of items which had been stolen from a pharmacy and which had been identified as such property in a police teletype put out on the evening of the robbery.

In the cases on which the State relies the factual background in each instance permitted application of the inference usually arising from possession of recently stolen property. That is not true in this case. Both law and logic impose limits on the length to which the inference which arises from the possession of recently stolen property may be pushed. The inference is permissible only where "a proper factual background exists for the inference . . . ." *Smith v. State,* 8 Md. App. 163, 166, 258 A. 2d 755 (1969). For example, in *Matthews v. State,* 237 Md. 384, 206 A. 2d 714 (1965), the Court

of Appeals held that the inference arising from possession of recently stolen property ordinarily cannot be imputed to a companion of the possessor without other supporting evidence, even though both may have been observed committing a similar crime at a different time or place.

Closer in point is this Court's decision in *Fisher v. State,* 5 Md. App. 155, 245 A. 2d 624 (1968). There, we set aside a conviction for storehouse breaking and malicious destruction of property, where the sole evidence to connect the accused with the crime (involving the breaking and entering of an automobile agency and the disappearance of a 1967 Plymouth automobile) was the fact that when apprehended he was in possession of a 1967 Plymouth with license plates which had been issued to a woman for a 1966 Plymouth, and the proof that this vehicle was the one stolen from the automobile agency was only inferentially shown by the State. Referring to the rule regarding the inference to be drawn from the possession of recently stolen property, we said in *Fisher* that "before this rule can be applied it must be established that the accused was in possession of the identical goods which were stolen. If this is not shown, the inference that one is the thief arising from the possession of recently stolen goods is not available to the prosecutor." *Id.* at 155.

The precise issue which confronts us on this appeal does not appear to have been directly decided in this State, although the rationale of *Fisher v. State, supra,* approaches it. In other jurisdictions, however, the point appears settled. For the presumption to apply, the State has the burden to show, *prima facie,* that the articles found in the possession of the defendant were taken at the time of the burglary or larceny with which he is charged. *Clark v. State,* 215 S.W.2d 184, 186 (Tex. Crim. App. 1948) ; *Clark v. State,* 197 S.W.2d 111, 113 (Tex. Crim. App. 1946) ; *State v. Sullivan,* 34 Idaho 68, 199 P. 647 (1921) ; 50 Am. Jur. 2d 321 (1970) ; 3 A.L.R. 1213 *et seq.* (1919), and *see* cases cited therein.

If the State proves nothing, other than the defendant had recently stolen property in his possession, it has not shown, at least *prima facie,* that such property was stolen in the burglary and robbery with which the defendant is charged. Such evidence tends to prove nothing "but another, and a separate and independent, larceny." *Parker v. United States,* 1 Ind. Terr. 592, 43 S.W. 858, 859 (1898).

In *State v. Oster,* 376 P. 2d 87, 90 (Oreg. 1962), the Supreme Court of Oregon, in discussing the inference which arises from the possession of recently stolen property, held "that identification of property found in the possession of the accused and that stolen in the theft with which he is charged must be by the most direct and positive testimony of which the case is susceptible." In this case, the State has offered no direct evidence to establish that the two checks which the appellant had in his possession were stolen during the course of the storehouse breaking of the premises at Hope's Windows. To sustain appellant's conviction, we would be required to permit the inference of possession of recently stolen property to be stretched beyond proper limits. By attenuated logic it might be argued that, since the appellant was in possession of property that belonged to Hope's Windows, it can be inferred that he was the thief who broke and entered these premises and stole other property even though there has been no direct showing that the checks were stolen in the burglary. While we have never hesitated in a proper case to uphold application of the inference arising from the possession of recently stolen property, we have never extended it so far as to make it a double inference, *i.e.,* that stolen property found in defendant's possession is inferred to be property recently stolen in a *particular* burglary or larceny which, in turn, then gives rise to the further inference that he was the burglar or the thief. An undisputed fact may properly serve as a conduit of logic through which to draw a second fact by inference, but an unproven or uncertain fact does not provide the same logical predi-

cate for the second, inferential fact. Inferences of fact have their proper place in the law of evidence and are "capable of bridging many gaps." *Galloway v. United States,* 319 U. S. 372, 386 (1943). They may not, however, be used by the State as a substitute for the evidentiary proof which it must offer if it is to carry its burden of proving all the elements of the crime beyond a reasonable doubt. *Fisher v. State, supra.* The evidence was insufficient to establish appellant's criminal agency with respect to the storehouse breaking and stealing of office machinery.

> *Judgment reversed and the case remanded for a new trial; costs to be paid by Montgomery County, Maryland.*