736 A.2d 395

**Adriene Ryan WEAR**

v.

**STATE of Maryland.**

**No. 1242, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Sept. 2, 1999.

---

Charles N. Shaffer (Gerald Solomon, P. Gregory Hilton and Shaffer & Solomon, P.A., on the brief), Greenbelt, for Appellant.

Steven L. Holcomb, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both of Baltimore and Scott L. Rolle, State's Atty. for Frederick County, Frederick, on brief), for Appellee.

Argued before SONNER, BYRNES, and PATRICE E. LEWIS (Specially Assigned), JJ.

BYRNES, Judge.

On April 17, 1994, the Brunswick Crab House, an establishment in Frederick County, was destroyed by fire. Adriene Ryan Wear, appellant, was convicted by a jury in the Circuit Court for Frederick County of being an accessory before the fact to first degree arson in the burning of the Crab House.[1] On appeal, she contends that the evidence was insufficient to support the verdict. We agree, for the reasons set forth below.

## FACTS AND PROCEEDINGS

From March 1991 until late summer 1993, appellant and her husband Robert Wear operated a bar and pool room known as the Brunswick Crab House ("the Crab House").[2] Robert was primarily responsible for the day to day operations of the Crab House. In August 1993, he suffered a stroke that left him with disabling physical and psychological injuries. Thereafter, appellant assumed operation of the Crab House until December 1993, when Robert returned following his convalescence.

During Robert's absence, business at the Crab House took a turn for the worse. Sharon Wentzel, a former employee of the Crab House, testified as a State's witness that in that time frame the Crab House frequently ran out of food and appel-

---

**1.** Appellant also was charged with arson and conspiracy to commit arson. The trial court granted motions for judgment of acquittal on those counts.

**2.** It is unclear from the record whether appellant and Robert Wear are legally married. They held themselves out as husband and wife and have seven children together.

lant had to pay cash for its purchases because she could not pay the bills as they became due. During the two years or so that Wentzel worked at the Crab House, she also lived in an apartment on the second floor of the building in which the Crab House was located. In September 1993, Wentzel left her employment at the Crab House and moved to a residence directly across the street. Before then, on a couple of occasions, she overheard appellant make statements about burning down the Crab House and obtaining insurance money.

Robert Conner, who lived with Wentzel, also testified for the State. He stated that in August 1993, before Robert Wear's stroke, appellant and Robert came to his and Wentzel's apartment and asked him to set fire to the Crab House. He refused. According to Connor, sometime after Robert Wear's stroke, appellant again inquired whether he would burn the building for her, and he again refused.

Wentzel and Conner each testified that at around 11 p.m. on April 16, 1994, they were watching television when they looked out their front window and noticed someone pull up to the Crab House in Robert Wear's tan window van. They identified the vehicle's occupant as Kevin Wear, Robert's son from a previous marriage. Wentzel and Conner each described Kevin Wear as having shoulder length brown hair. Wentzel recognized Kevin because she had seen him around the Crab House bar. She watched Kevin park Robert's van outside the Crab House and enter the building through a back gate.

The State also called Gary Ward, who had known appellant for about eighteen years. Ward stated that in November 1993, appellant complained to him that she could not afford Robert's medical expenses, that the liquor board was about to pull her license for the Crab House, and that "the business just wasn't doing nothing." Appellant asked Ward to come to the Crab House to check out an ostensible heating problem. When he arrived, appellant asked him to go upstairs with her so that they could speak in private. Appellant told him that the medical bills for Robert's stroke were piling up, and that business was down because the Frederick County Liquor

Board had made her remove the pool tables from the bar. She then offered to pay Ward $20,000 in insurance proceeds if he would burn the bar down for her. Ward refused. He testified that he and appellant then went into the basement of the Crab House, where the furnace was located. Appellant pointed out that all they would have to do to burn the building down would be to crack the fuel line and set the fuel on fire. Ward again refused to participate.

Ward testified that on two more occasions appellant solicited him to torch the Crab House. About two weeks after the "furnace call," appellant called him on the pretext of having plumbing problems. Ward went to the Crab House with his wife, Brenda. Brenda sat in the bar while appellant and Ward went into the dining area to talk. According to Ward, appellant asked whether he had "given anymore thought" to what they had discussed previously, and then offered him $20,000 or 20% of the insurance proceeds to burn the Crab House. Ward responded that he wanted nothing to do with the scheme. He and Brenda then left.

Ward testified further that in December 1993, when he and Brenda and appellant and Robert went to a livestock auction in Woodsboro, appellant increased her offer to him to torch the Crab House to $20,000 *and* 20% of the insurance proceeds. Ward refused and threatened to report appellant to the fire marshal if she ever raised the subject again.

Brenda Ward testified for the State and corroborated some of the factual circumstances surrounding the second and third meetings between appellant and Gary Ward. She testified that when the couples went to the Woodsboro livestock auction, she heard appellant ask Gary Ward if he had given more thought to her previous request.

Mark Ebersole, a volunteer fire fighter, was called by the State and testified that early in the morning hours of April 17, 1994, he drove by the Crab House and noticed a brown or gold work van with a dented rear quarterpanel parked along side the building. Two white males with black shoulder length hair were standing by the rear of the van. Ebersole contin-

ued on his way home. Approximately five to ten minutes later, he was summoned by the alarm to a fire at the Crab House. He testified that about twelve minutes elapsed from the time that he saw the two males outside the Crab House to the time that he returned to find the Crab House on fire. By then, the van and the people that he had seen previously were gone.

Conner and Ward each testified emphatically that they did not set the Crab House on fire and had nothing to do with the fire.

At the time of the fire, two insurance policies on the Crab House were in effect. A policy written by American States Insurance Company covered the contents of the Crab House for $100,000 and covered loss of business income for $60,000. Appellant filed a proof of loss for the limits of that policy. American States eventually settled with her for $110,000. A financial investigation of appellant by the Bureau of Alcohol, Tobacco and Firearms revealed that shortly after she deposited the American States settlement draft into her bank account, she made four cash withdrawals in the amounts of $9,000.00, $9,900.00, $5,000, and $15,142.48.

The second policy, with Frederick Mutual Insurance Company, covered the Crab House structure for $200,000. Several weeks before the fire, Frederick Mutual notified appellant by certified mail of its intention to cancel the policy on May 9, 1994. After the fire, Frederick Mutual paid off the balance of the mortgage on the property.

We shall recount additional facts as necessary to our discussion of the issues.

## DISCUSSION

The standard for review of the sufficiency of the evidence in a criminal case is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Bloods-*

*worth v. State,* 307 Md. 164, 167, 512 A.2d 1056 (1986). Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder. *Binnie v. State,* 321 Md. 572, 580, 583 A.2d 1037 (1991).

Circumstantial evidence is entirely sufficient to support a conviction, provided the circumstances support rational inferences from which the trier of fact could be convinced beyond a reasonable doubt of the guilt of the accused. *Finke v. State,* 56 Md.App. 450, 468–78, 468 A.2d 353 (1983); *see also, Hagez v. State,* 110 Md.App. 194, 204, 676 A.2d 992 (1996)("[t]he true test is whether the evidence, *circumstantial or otherwise,* and the inferences that can reasonably be drawn from the evidence, would be sufficient to convince a rational trier of fact, beyond a reasonable doubt, of the guilt of the accused.")(emphasis added). Thus, the sufficiency standard applies to all criminal cases, including those resting upon circumstantial evidence, *Wiggins v. State,* 324 Md. 551, 567, 597 A.2d 1359 (1991), since, generally, proof of guilt based in whole or in part on circumstantial evidence is no different from proof of guilt based on direct eyewitness accounts. *See Eiland v. State,* 92 Md.App. 56, 607 A.2d 42, (1992), *rev'd on other grounds,* 330 Md. 261, 623 A.2d 648 (1993).

In this case, appellant challenges the sufficiency of the evidence to support a finding that she was an accessory before the fact to first degree arson. First degree arson is the willful and malicious burning of a dwelling or occupied structure. Md.Code (1957, 1996 Repl.Vol.), § Art. 27 § 6. "An *accessory before the fact* is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof, without having been present either actually or constructively at the moment of perpetration." *State v. Hawkins,* 326 Md. 270, 604 A.2d 489, (1992)(quoting *State v. Ward,* 284 Md. 189, 197, 396 A.2d 1041 (1978)(emphasis in the original)); *Huff v. State,* 23 Md.App. 211, 214–15, 326 A.2d 198 (1974). Accordingly, a conviction for accessory before the fact to first degree arson requires proof beyond a reasonable doubt that a first degree arson was committed and

that the accused "aided, counseled, commanded or encouraged the commission" of that crime.

Appellant does not contend that the evidence presented was insufficient to support a finding that the burning of the Crab House was an act of first degree arson.[3]  Rather, she contends that the record is devoid of any evidence from which a reasonable fact-finder could conclude that she "aided, counseled, commanded or encouraged" the commission of that crime.

■  At trial, the State theorized that the fire at the Crab House was set by Kevin Wear, appellant's step-son.  To be sure, the evidence established that Kevin Wear was seen in front of the Crab House a few hours before the fire and that a man matching his description was seen in the area of the Crab House minutes before the fire.  Even assuming that Kevin set the fire, however, there was no direct evidence that appellant "aided, counseled, commanded or encouraged" him in doing so, as the State concedes.  The State maintains, however, that there was sufficient circumstantial evidence to support the verdict.  We disagree.

■  The circumstantial evidence that the State relies upon to support its argument pertains to appellant's motive and intent to have the Crab House burned.  Without question, there was ample evidence that appellant was motivated to have the Crab House destroyed by fire: business was poor, medical bills were piling up, and the business's liquor license was in jeopardy.  In addition, there was strong evidence that appellant intended to have the building burned: she twice attempted to solicit individuals to commit arson.  The evidence established, however, that neither of the men that appellant

---

**3.**  Indeed, there is much evidence on that score, including the testimony of Deputy Fire Marshall Harry Meminger, an expert who determined that the fire was incendiary in nature, and that it had three separate origins.  Moreover, although the Crab House was not occupied at the time of the burning, it contained apartments or "dwellings," thereby qualifying the crime committed as arson in the first degree.  Art. 27, § 6(a).

asked to set fire to the Crab House did so; to the contrary, they flatly refused. The State maintains, in effect, that the evidence that appellant unsuccessfully solicited two people to burn the Crab House was adequate circumstantial evidence that she successfully solicited Kevin Wear, or whoever in fact set the fire, to do so. While the doing of an improper act may give rise to an inference that the actor was motivated to do it and intended to do it, the converse is not the case: it may not be inferred from a person's motive or intention to do an improper act that he did so. *Wood v. Palmer Ford, Inc.*, 47 Md.App. 692, 707, 425 A.2d 671 (1981). As we stated in *Lambiotte v. State*, 17 Md.App. 545, 303 A.2d 163 (1973):

> Inferences of fact have their proper place in the law of evidence and are capable of filling many gaps. They may not, however, be used by the State as a substitute for the evidentiary burden of proving all the elements of a crime beyond a reasonable doubt.

*Id.* at 563, 303 A.2d 163 (internal citations omitted).

There was no evidence, direct or circumstantial, that appellant "aided, counseled, commanded or encouraged" the person or persons who set the Crab House afire to do so. The State's evidence of appellant's motive and intent to have the Crab House burned could not serve as proof that she successfully solicited someone to do so. " 'Circumstantial evidence which merely arouses suspicion or leaves room for conjecture is obviously insufficient. It must do more than raise the possibility *or even the probability* of guilt. [I]t must ... afford the basis for an inference of guilt beyond a reasonable doubt.' " *Taylor v. State*, 346 Md. 452, 458, 697 A.2d 462 (1997) (emphasis supplied)(quoting 1 *Underhill, Criminal Evidence* § 17, at 29 (6th ed.1973)).

The evidence was insufficient to establish appellant's guilt of the crime of accessory before the fact to first degree arson.

**JUDGMENT REVERSED; COSTS TO BE PAID BY FREDERICK COUNTY.**