People of the State of Illinois, Plaintiff-Appellee,
v. Leroy Bivens, Defendant-Appellant.

Gen. No. 53,834.

First District, Third Division.

April 2, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Nunzio Tisci, James N. Gramenos, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Robert Kelty, and Paul P. Biebel, Jr., Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Defendant, Leroy Bivens, was charged with the crime of burglary. After a bench trial, he was found guilty of that crime and sentenced for a term of four to twelve years. He appeals, contending that the court erred in accepting his jury waiver and that he was not proved guilty of burglary beyond a reasonable doubt. The facts are as follows.

A radio and television sales and service store owned by Gustav Hahn and located at 1247 Chicago Road, Chicago Heights, was burglarized on September 6, 1967, at about 1:40 a. m. The store alarm was activated at Hahn's home, and he immediately notified the police. One of the windows in the store was broken; two television sets, two tape recorders and a small radio were missing.

Albert Ondreka, an officer of the Skyline Merchant Patrol, employed by town merchants to watch their stores, was armed and on duty in a patrol car at the time. When he was advised that the burglar alarm at the Hahn Store was ringing, he proceeded towards the store and observed a man running and carrying two television sets. He placed the man, named McGee and not involved in this appeal, under arrest and turned him over to Officer Nowicki of the Chicago Heights Police Department. Ondreka resumed his patrol, and about ten minutes later drove to an alley behind the Deccio Concrete Company, the rear of which abutted on railroad tracks. This was about five blocks from the Hahn store. He testified that as he emerged from his patrol car and approached the embankment, he heard two voices discussing how a certain button and plug were used. Holding his flashlight and gun, he climbed up to within a few feet of two men sitting on the tracks and informed them that they were under arrest. Ondreka testified that one of the men was

Arnold Lee and the other was defendant, who was wearing a red jacket. Ondreka observed one of the tape recorders in Lee's lap and the other one next to defendant. There was no artificial lighting, but a full moon was out. When Ondreka announced that the men were under arrest, defendant ran and Ondreka fired two shots in the air. Officer Richard Stultz of the Chicago Heights Police Department had responded to several calls concerning the burglary. As he patrolled, he heard the two gunshots. As he emerged from the squad car, he testified that he observed a man running from the railroad tracks and hiding behind two concrete molds. Officer Stultz placed the man under arrest, and identified him as defendant. Hahn subsequently identified the recovered property as that stolen from his store.

Arnold Lee, who had been convicted of the burglary, testified for the defense that he and McGee committed the burglary in question, and that defendant had not participated in it.

Defendant testified that he had been at a party in Phoenix, Illinois. He returned to Chicago Heights by bus at 1:30 a. m. As he was walking home from the bus stop, he crossed railroad tracks and heard gunshots. He hid behind some sewer caps, and because he had been drinking that night, passed out. Then several police officers came up and arrested him. He denied committing the burglary. He was acquainted with Lee, but did not know McGee.

An employee of the bus company testified by stipulation that bus company records indicated that their bus left Phoenix, Illinois at 12:45 a. m. and arrived in Chicago Heights at 1:15 a. m., and that their buses were sometimes 10 to 15 minutes behind schedule.

John Garcia, a neighborhood resident, testified for the State in rebuttal that at about 1:50 a. m., he saw two men running down the street past his house; one had a

dark jacket and the other one was wearing a red jacket. Garcia called the police to report that he saw two men running and carrying some objects.

Defendant first contends that the court erred in accepting his jury waiver, arguing that he did not knowingly waive his right to a jury trial. Prior to trial the court inquired if it was to be a jury trial, and defense counsel replied that it would be a bench trial. Defendant then signed a jury waiver.

We believe that the holding in The People v. Sailor, 43 Ill2d 256, 253 NE2d 397 (1969), is dispositive of the issue. In that case, the court held that where defendant's attorney in defendant's presence and without objection by defendant waived a jury trial, there was no merit in defendant's contention that she had not knowingly and intelligently waived a jury trial. The court stated at p 260:

> "An accused ordinarily speaks and acts through his attorney, who stands in the role of agent, and defendant, by permitting her attorney, in her presence and without objection, to waive her right to a jury trial is deemed to have acquiesced in, and to be bound by, his action."

Similarly in the instant case, defendant's attorney, in defendant's presence, informed the court that this would be a bench trial. Defendant failed to object, and is therefore bound by the action of his counsel.

Defendant next contends that the evidence was not sufficient to prove his guilt beyond a reasonable doubt.

It is fundamental that evidence of recent and unexplained stolen property in the possession of an accused is sufficient to sustain a conviction. The People v. Bennett, 3 Ill2d 357, 121 NE2d 595 (1955). And in The People v. Reynolds, 27 Ill2d 523, 190 NE2d 301 (1963), the Supreme Court, at pp 525–26, stated as follows:

> "Evidence of recent, exclusive and unexplained possession of stolen property by an accused, either singly or jointly with others, may, of itself, raise an inference of guilt absent other facts and circumstances which leave . . . a reasonable doubt as to guilt."

■■ The evidence presented by the State was sufficient to show that defendant was in recent, unexplained and exclusive possession of certain of the stolen property. Ondreka testified that he saw defendant and Lee sitting on the railroad tracks; that Lee had a tape recorder on his lap and that defendant had a tape recorder next to him; and that they were discussing something about a plug and a button. The owner of the store identified the recorders as having been taken from his store. Thus defendant was seen sitting next to one of the stolen tape recorders, while his companion had the other stolen tape recorder on his lap, just a short time after the burglary had occurred and only about five blocks from the scene of the crime. Moreover the two men were apparently discussing the operating mechanisms of the recorders. It was not essential for the inference of guilt that defendant actually be holding the tape recorder in his hands. See People v. Reynolds, supra. Under the circumstances of the case, he had such unexplained possession of stolen property as would justify a finding of guilty. The case of People v. Davis, 69 Ill App2d 120, 216 NE2d 490 (1966), cited by defendant, is factually not in point. In that case, the State failed to present any evidence that defendant was in possession of the stolen property, an automobile.

■ The credibility of the witnesses was a matter for the trial court to determine. Ondreka positively identified defendant as having been on the tracks with Lee, and as the one who fled, despite gunshots, when he attempted to arrest the two men. At that time Ondreka was only a few feet from defendant, and while there was

no artificial lighting, he testified that he was using a flashlight and that there was a full moon. Stultz testified that after he heard gunshots, he saw defendant run from the tracks and hide behind concrete molds. He then arrested defendant. Ondreka and Stultz both had adequate opportunities to observe defendant, and their identifications were sufficient for conviction. For the defense, Lee testified that defendant was not involved in the burglary, and defendant testified that he was merely walking through the area at the time in question. It was the duty of the trial court to determine the credibility of the witnesses, and we see no reason to disturb its finding that defendant committed the burglary in question.

▪ Under his heading that he was not proved guilty of burglary beyond a reasonable doubt, defendant also argues that the court erred in refusing to grant him a continuance to subpoena Officer Nowicki as a defense witness. When the State rested, defendant moved that Officer Nowicki's testimony before the grand jury be stipulated to by the State or that he be granted a continuance to subpoena Nowicki. Both requests were denied, and defendant made an offer of proof that Nowicki had testified before the grand jury that he was told that both men ran from Ondreka, and that Stultz arrested them both. We find that the court did not abuse its discretion in denying defendant's motion for a continuance. Nowicki was not a material witness in this case. He was not involved in defendant's arrest, and obviously his testimony as indicated by the offer of proof was hearsay. The State had no duty to call him as a witness, and if defendant wished to assure his presence, he should have arranged for it prior to trial.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.