**STATE of Iowa, Appellee,**

v.

**Bruce J. JELLEMA, Appellant.**

No. 54923.

Supreme Court of Iowa.

April 25, 1973.

Orville A. Hames, Remsen, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., Robert R. Huibregtse, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, UHLENHOPP and McCORMICK, JJ.

MASON, Justice.

A Sioux County grand jury returned an indictment which, as amended, charged Bruce J. Jellema with breaking and entering with intent to commit a public offense, to wit: larceny contrary to section 708.8, The Code. Defendant entered a plea of not guilty to the indictment. The matter proceeded to trial by jury. Defendant's motion for directed verdict made at the close of the State's evidence and renewed at the close of all evidence was overruled and the matter was submitted to the jury which convicted him of the crime charged. He appeals from the judgment imposing sentence on this conviction.

Defendant's assignments of error relied on for reversal relate to the court's ruling permitting witnesses whose names were not endorsed on the indictment to testify as State's witnesses in its case in chief; admission into evidence of a blackboard used by witnesses in demonstrating their testimony to the jury; failure to sustain defendant's motion for opportunity to examine a police report referred to by a State's witness in his testimony; and insufficiency of the evidence to sustain the verdict.

The incident giving rise to this prosecution occurred December 12, 1970. About 2:30 a. m. that morning Chief William Starkenburg of the Alton police department examined the windows and doors of Foreman's Tire Service while on routine patrol. The building was found secure. Only a few minutes later as he was continuing his patrol he observed defendant two blocks north of the tire service, waved to him and drove on to the post office to obtain a newspaper. Approximately ten to twelve minutes later defendant approached Starkenburg. He told Starkenburg he had witnessed a man running away from Foreman's Tire Service in a westerly direction along South County Road.

Both men then returned to the tire service. A check of the premises revealed a window of the rear door had been broken.

Starkenburg immediately radioed the Sioux County sheriff, Ted Hoogland. Upon receiving the call at about 3:00 a. m., Hoogland telephoned his deputy, Larry Zeutenhorst and instructed him to assist Starkenburg in an investigation of the apparent crime. After notifying Hoogland, defendant and Starkenburg went to Foreman's home and advised him there had been a break in at his store. Starkenburg then returned to the tire service while Foreman drove defendant to his home before proceeding to the station.

There, Starkenburg, Hoogland and Zeutenhorst discovered one set of footprints leading to and from a second window through which the building had been entered. Although the footprints were intermittent and often incomplete, the men traced the prints pointing toward the tire service to the curb in front of defendant's home. The footprints of one walking away from the window were lost about three blocks north of the building and 150 feet to the west of defendant's home.

Defendant was then awakened by sheriff Hoogland and at his request directed Hoogland and Zeutenhorst to the place where he stood when he noticed someone running away from Foreman's Tire Service. With the aid of flashlights, the men surveyed the street in close proximity to the tire service and west of the tire service on South County Road but found no footprints similar to those discovered near the window.

Deputy sheriff Zeutenhorst testified the footprints pointing toward the tire service were traced from the rear of the building, where the snow was six to eight inches in depth, to the curb in front of defendant's home. He stated the footprints were distinguishable because a layer of snow and frost covered the streets, which he said had been plowed after the last snowfall. But since the sidewalk adjacent to defendant's home had been shoveled the footprints could not be followed from the curb

to defendant's doorstep. He indicated the men made no effort to trace the set of footprints in any direction beyond the Jellema house. Zeutenhorst described the footprints as those of "a cowboy boot or a mod style shoe" about 11–11½ inches in length, characterized by "a deep heel and the pointed toe." No impressions, photographs or measurements with a scaled instrument were taken of the footprints.

After some investigation the officers and defendant went to the Alton city hall. There defendant was asked by the sheriff if he had changed shoes. He said he had. Jellema testified he wore a 9½ shoe and that when he saw someone running from behind Foreman's Tire Service he was wearing a pair of "suede saddle shoes." Zeutenhorst testified they did not attempt to determine whether defendant possessed a pair of boots or shoes that would match the footprints that were traced to his home.

Similar testimony was presented by sheriff Hoogland who testified that "slight" frost enabled them to trace the footprints leading to and from the windows through which entry into Foreman's Tire Service was gained. He stated the impressions were either of the toe or heel, rather than of the complete boot or shoe. Sheriff Hoogland further testified he made no effort to obtain from defendant the shoes defendant had said he was wearing at the time he allegedly witnessed someone in the vicinity of Foreman's. On the basis of this evidence defendant was charged by preliminary information with the crime of breaking and entering.

Defendant denied commission of the offense. He related that as he walked south toward Foreman's Tire Service he saw a man run out from behind the building and along South County Road heading west. Thereafter, he notified Starkenburg of his observation, accompanied Starkenburg to the scene and to Foreman's home, went home and later returned to the tire service with the three officers.

I. We consider first defendant's fourth assignment in which he insists the evidence was insufficient to sustain the verdict.

On defendant's appeal from criminal conviction based on jury verdict challenging sufficiency of evidence to sustain the verdict we view the evidence in the light most favorable to the State and accept as established all reasonable inferences tending to support action of the jury. It is necessary to consider only the supporting evidence whether contradicted or not.

Also, it is for the fact finder, not us, to decide questions of fact and determine credibility of witnesses. And a finding of guilt is binding on this court unless without substantial support in the record. State v. Cartee, 202 N.W.2d 93, 96 (Iowa 1972), and authorities cited.

Where, as in the present case, all evidence connecting the accused with the alleged crime is circumstantial, this court has consistently adhered to the principle that circumstantial evidence on each and every essential element to conviction is sufficient to warrant a finding of guilt if it satisfies the jury beyond a reasonable doubt. Circumstantial evidence may be equal in value to and sometimes more reliable than direct evidence. However, where circumstantial evidence alone is relied on as to any one or more of the essential elements the circumstance or circumstances must be entirely consistent with defendant's guilt and wholly inconsistent with any rational hypothesis of defendant's innocence and so convincing as to exclude a reasonable doubt that defendant was guilty of the offense charged. Like direct evidence it must raise a fair inference of guilt, generating something more than suspicion, or speculation or conjecture. State v. DeRaad, 164 N.W.2d 108, 109–110 (Iowa

1969); State v. Stamper, 195 N.W.2d 110, 111 (Iowa 1972), and State v. Cartee, 202 N.W.2d at 96.

■ Mere presence at the scene of a crime is not enough to prove defendant committed the offense.

In accordance with the State's theory defendant left his home, walked four blocks to the rear of Foreman's Tire Service, broke a window and entered the building sometime between 2:30 and 2:45 a. m., removed approximately $25 from the cash register, left the building through the same window and walked another three blocks to a point within about one block from his home. We are told he was observed standing at the corner of Fifth Avenue and Seventh Street a short while after 2:30 a. m., but there is no indication that point was crossed when the officers traced the set of footprints to and from defendant's home. No comparison was made between the footprints located near the windows and defendant's shoes to determine whether his shoes could have made the impressions left in the snow. In fact, none of the evidence adduced by the State suggests any of the three officers ever procured or attempted to procure from defendant the pair of shoes he was wearing at the time he purportedly saw someone run from behind Foreman's Tire Service. Moreover, the officers testified they did not search beyond defendant's home for a continuation of the set of prints purportedly leading from the house to Foreman's Tire Service. Zeutenhorst testified he estimated the size of the footprints to be 11–11½ inches by placing his foot adjacent to one of the prints. As a witness, defendant reiterated his statement previously given at the police station that he wore size 9½ inch shoes. The record does not reveal any sum of money was discovered on defendant's person or, for that matter, that his person was searched. There is no indication an attempt was made to lift fingerprints from the immediate scene of the crime. The prosecution's witnesses do not intimate defendant's conduct ever aroused their suspicion.

■ Testimony that a single set of footprints leading to the point of entry into Foreman's Tire Service from defendant's home, and back toward the home, does not constitute substantial evidence reasonably tending to support the charge filed against defendant here. The evidence does nothing more than serve to generate mere suspicion, speculation or conjecture, and there does arise a reasonable doubt as a matter of law.

Due to the inadequacy of the record even as amended in this case it has been necessary to gather the facts of this lawsuit from the trial transcript.

Because of our conclusion that a jury question was not generated, the trial court's failure to sustain defendant's motion for directed verdict made at the close of all evidence requires reversal.

Therefore, the case is remanded to the district court for entry of an order dismissing the indictment discharging and exonerating his bail or if money has been deposited instead, that it must be returned to him. Section 793.21, The Code.

It is not necessary that we reach other errors assigned by defendant.

The case is therefore—reversed and remanded with directions.