**STATE of Iowa, Appellee,**

v.

**Ronald LEWIS, Appellant.**

**No. 58182.**

Supreme Court of Iowa.

May 19, 1976.

James K. Marvel of Karr, Karr & Karr, Webster City, for appellant.

Richard C. Turner, Atty. Gen., Nancy J. Shimanek, Asst. Atty. Gen., Carroll Wood, County Atty., for appellee.

MASON, Justice.

Defendant Ronald Lewis was charged by county attorney's information filed February 3, 1975, with the crime of breaking and entering with intent to commit a public offense, namely, the larceny of goods from the Dalbey Service Station in Ellsworth, Iowa, in violation of section 708.8, The Code. He appeals from judgment and sentence imposed on his conviction by a jury of the offense charged.

Defendant's contentions present four issues for review which will be stated later in more detail. However, an issue of vital importance is whether the trial court erred in giving instruction 12 which allowed proof of possession of property recently stolen in a burglary to support an inference the party in possession committed the underlying breaking and entering.

We narrate some of the factual background leading to the prosecution. The break in occurred some time between 11:40 p. m. January 24 and 3:00 a. m. January 25, 1975. Hamilton County Sheriff's deputies Roy W. Olmstead and Dennis L. Jackson were on duty this particular evening. Driving separate cars, both normally patrol the county and apparently check the Dalbey Service Station "a couple of times a night." In connection with this, Olmstead inspected the building at approximately 10:00 p. m. and found everything in order. Jackson did the same around 11:40 p. m. and found nothing amiss. However, on his second check around 3:00 a. m. Olmstead found the east door of the establishment and a window, boarded up because of a previous break in, were open.

With his spotlight illuminating the building, he radioed Deputy Jackson and a Jewell police officer named Woodley for assistance. Jackson and Olmstead entered through a door on the north side as Woodley proceeded around the east side of the station. No one was found in the building but the front of the cigarette machine was lying on the floor. Jackson telephoned Clifford F. Dalbey, owner of the station, who arrived a few minutes later.

Dalbey at first noted a box of merchandise received January 24 from the G & K Wholesale Company of Iowa Falls · was missing. The box had the name "Dalby" written on it. The invoice listing the products delivered (exhibit 2) had not been stolen. It included one carton of Salem cigarettes, two Camel Filters, two Raleighs, three Kools, one Marlboro, one Belair and one Kent. The station also received on January 24 the following items: one box of Snickers candy bars, six packages of "Mixture 79" smoking tobacco, 12 packages of Sir Walter Raleigh smoking tobacco, one box of size C batteries and one box of Muriel Airtip cigars. Some time later Mr. Dalbey noticed seven box end wrenches, some of which were stamped with his initials (C.F.D.), were also missing (exhibits 5, 6, 7, 8, 9, 10, 11, 12). Several other tools had not been so marked.

In the meantime, Sergeant Robert Dyar of the Ankeny Police Department was on patrol duty in Ankeny. At approximately 4:00 a. m., January 25, he noticed a car parked in front of a service station closed for the night. The taillights were not burning but the car's dome light was on. Dyar testified that as he approached the station this car "hurriedly left the lot" with its lights still off. The policeman then noticed the station's Pepsi Cola machine had been turned sideways and had pry marks on it. Dyar pursued and called for help. Although Dyar never lost sight of the car, Officer Robert Kramme actually stopped the Ford LTD. The two occupants of the car were defendant and Morris Kyle McCallister, also charged in this crime but not an appellant.

Sergeant Dyar, who had since arrived on the scene, shined his flashlight through the driver's open door. The light revealed two crowbars with blue paint marks similar to the blue on the Pepsi machine as well as what appeared to be a money bag protruding from under the front seat. Upon noticing the blue paint, Dyar instructed Officer Kramme to place the two under arrest.

The sergeant then noticed a tire wrench similar to exhibit 3, identified by Mr. Dalbey as the one taken from his station. There were also various other tools including some wrenches with initials stamped on them. Dyar, however, did not remove wrenches from the car or inventory them. Contents of the trunk included a cardboard box containing cigarettes and candy bars. The box apparently bore the misspelled name "Dalby Serv." This property Dyar later transported to the police station and placed in the custody of Detective Longnecker where the contents were inventoried.

Dyar remained at the scene until the wrecker arrived to tow the car to the impoundment lot. Dyar testified this procedure involves towing the car to the lot surrounded by a "six to seven foot high chain link fence. It has two gates which are padlocked. The vehicles are taken in and secured, the doors locked, and the keys given to the police station, and the gates are locked."

In any event, Detective Ronald Longnecker had been called into the case. He arrived before the car was towed away and inventoried the wrenches (exhibits 3–12). The wrenches were in his custody until January 28 when they were released to the Hamilton County Sheriff's Department.

It is clear many of the items seized were of the exact type and quantity of the goods listed on the invoice and delivered to Dalbey January 24. However, the Sir Walter Raleigh and Mixture 79 pipe tobaccos were not recovered. Furthermore, quantities of Milky Way candy bars, Certs, Life Savers, Rolaids and Brach's candy were recovered from the car but were not on the invoice.

Dalbey testified, however, he had products of this type at the station January 24.

Defendant's side of the story would, if believed, remove the possibility he committed the break in. It was asserted he and McCallister, after purchasing some goods at the Richman-Gordman store on Hichman Road in Des Moines around 8:00, played cards at the Lewis residence until approximately 1:00 a. m. The fact the card game occurred was corroborated by two other card players besides defendants as well as Mrs. Lewis.

After the card game ended, Lewis and McCallister drove to Ankeny to inspect a Camaro on the Moyer Chevrolet used car lot. (Both were at the time working for Thrun Chevrolet in Des Moines). After leaving the Moyer lot is when they claim to have been stopped by the police. It was denied they were ever at an Ankeny service station or that they had burglarized the Dalbey station in Ellsworth. McCallister claimed they were pulled over at approximately 2:00 a. m., as opposed to 4:00 a. m.

■ I. The first issue for review stems from defendant's contention the trial court erred by submission of instruction 12 concerning the inferences from possession of recently stolen property since there was no evidence tending to establish defendant's presence at the scene of the break in.

The State insists defendant failed to preserve this issue for review. This argument is based on the fact defendant's exceptions to proposed instruction 12 were taken to the "tentative draft of the instructions" and no further exceptions or objections were taken or made by defendant before the instructions in their final form were read to the jury. The State relies on rule 196, Rules of Civil Procedure, and *State v. Clark,* 187 N.W.2d 717, 719 (Iowa 1971) and *State v. Schmidt,* 259 Iowa 972, 979–980, 145 N.W.2d 631, 636, as support for its position.

The trial transcript discloses the following record was made:

"The Court is going to have the reporter hand you a tentative draft of the instructions as soon as we finish here. I want to give you opportunity to go over them, and then I would hope that in thirty minutes or such a matter we could take exceptions thereto so we could get to final arguments.

"I suggest you tell me when you are ready to take exceptions, let's put it that way; but I do think it important to proceed as fast as we can with due diligence and due deliberate speed, to use an old phrase.

"The reporter will give you the instructions now.

"(Whereupon, the tentative draft of the Court's instructions was handed to counsel on each side, and a short recess taken.)

"(At 2:15 p. m., the same day, further proceedings were had to the Court, IN THE ABSENCE OF THE JURY, as follows:)

"THE COURT: Gentlemen, some time ago I delivered to counsel on both sides a tentative draft of the instructions, and I would at this time like to give you men opportunity to take exceptions to that tentative draft.

"Exceptions on the part of the state?

"MR. WOOD: No exceptions, Your Honor.

"THE COURT: Exceptions on the part of the defendants?"

At this point defendant objected to instruction 12 "on the basis that any inference that may be raised is, No. 1, an unconstitutional shift in the burden of proof. In addition thereto, any inference has not been fully established in that the state has failed to link the removal of the objects, or the presence of the objects in the automobile with the defendants."

He also objected to the inclusion of the last three lines on the second page of instruction 12 which are not before us. In any event, the trial court excluded those lines from instruction 12.

A similar problem to that presented here as to the timeliness of defendant's objections to instruction 12 was before the court in *State v. Baskin,* 220 N.W.2d 882, 884–886 (Iowa 1974). We there held the State's contention was without merit. In light of the record here the State's argument is

governed by the pronouncements made in *Baskin.*

Nevertheless, it is the court's opinion there exists another reason which was not urged by the State why defendant failed to preserve for review the issue asserted in this contention. Defendant objected to the tentative draft of instruction 12 on the basis the instruction unconstitutionally shifted the burden of proof. He also claimed that "any inference has not been fully established in that the State has failed to link the removal of the objects, or the presence of the objects in the automobile with the defendants."

The test for determining the sufficiency of an objection to an instruction in order to preserve error is whether the objection or exception taken alerted the trial court to the error which is now urged on appeal. *Dutcher v. Lewis,* 221 N.W.2d 755, 759 (Iowa 1974). See also *State v. Baskin,* 220 N.W.2d at 886. It cannot be logically argued the foregoing objection to instruction 12 in proceedings had at the trial level alerted the court to the contention defendant now attempts to present for review in this court wherein he maintains in brief and argument "some evidence is needed to place the defendant at the scene of a crime in order for the State to rely on an inference from * * * possession of [recently] stolen property." At another point defendant asserts "it was reversible error to ignore the burden to prove presence at the scene and instruct the jury that it might infer guilt from recent possession."

Even though the State failed to assert the foregoing defect as a basis for its challenge to defendant's contention and instead elected to urge defendant's attack on the instruction in the tentative draft rather than in the final draft as a reason why defendant's contention presented nothing for review, we point out that we are not bound to follow the reasons of parties or counsel where questions are properly brought to our notice. We may discard all their reasons, and support their objections or positions upon the true grounds, even if they have not rested upon them. *Bond v.*

*Wabash, St. Louis & Pacific R'y Co.,* 67 Iowa 712, 716–717, 25 N.W. 892, 893–894. In support of the foregoing principle see *State v. Elliott,* 88 N.M. 187, 539 P.2d 207, 212.

The alleged error asserted in this contention not having been properly preserved in the trial court presents nothing for review in this court.

II. In his next contention defendant reaches what we have stated to be the issue of vital importance in this lawsuit. He insists his constitutional right of due process was denied him. "In the absence of other evidence, a conclusion that recent possession of stolen merchandise is sufficient to convict the possessor of breaking and entering, is a conclusion based upon inferences derived from inferences. Such a procedure results in decisions that are not based on facts. When this happens the burden is shifted to the Defendant to avoid such conclusions by coming forward with evidence that such inferences are not valid. The presumption of innocence is lost to inferences, not facts, and the burden of proof unconstitutionally shifts to the Defendant."

The law concerning permissible inferences has seen considerable litigation over the past few years. The several cases speak in terms of "inferences" and "presumptions" somewhat interchangeably, " * * * but they are nevertheless fundamentally different. A true presumption is a conclusion which the law makes *mandatory* upon proof of the required preliminary facts; and inference is a *permissible* finding based on the existence of other facts. Black's Law Dictionary, pages 917 and 1349, (Rev. Fourth Ed. 1968)." *State v. Hansen,* 203 N.W.2d 216, 219 (Iowa 1972). (Emphasis in the original).

Thus, in Iowa as well as in numerous other jurisdictions, the law has long allowed juries to employ the permissible *inference* possession of recently stolen property *may be* utilized as proof defendant committed a breaking and entering. In *State v. Mays,* 204 N.W.2d 862, 865 (Iowa 1973), this court stated:

"The crime of breaking and entering is not usually committed openly, and proof is often dependent upon circumstantial evidence. Frequently the proof of corpus delicti shows, as here, that larceny was committed in connection with the breaking and entering, and the evidence further discloses the defendant in possession of the recently stolen property. The rule in this state is that '[p]roof of defendant's possession of recently stolen property when it is also shown that the larceny took place in connection with a burglary is sufficient to warrant a conviction of breaking and entering.' *State v. Jensen,* 245 Iowa 1363, 1373, 66 N.W.2d 480, 485."

This court rather recently upheld the constitutionality of the inference in the context of a larceny in the nighttime case. In *State v. Thornburgh,* 220 N.W.2d 579, 585 (Iowa 1974), defendant argued the inference " * * * improperly shifted the burden of proof and violated his fifth amendment right against self-incrimination. He also maintains the instruction violates the presumption of innocence as guaranteed by amendment 14."

The court noted at 220 N.W.2d 586, "the jury is simply told in the present instruction that if it finds beyond a reasonable doubt (1) the property involved was stolen and (2) defendant thereafter had recent possession, it was authorized but not required to draw a permissible inference defendant had stolen it. We do not find it constitutionally objectionable in the respects urged. It satisfies the requirement of due process. See *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380."

As stated, defendant contends the inference shifts the burden of proof to him and destroys the presumption of innocence. And, " * * * generally in a criminal case the prosecution bears both the production burden and the persuasion burden. In some instances, however, it is aided by a presumption, * * * [citing authorities], or a *permissible inference,* * * * [citing authority] * * *. These procedural devices require (in the case of a presumption) or permit (in the case of an inference) the

trier of fact to conclude that the prosecution has met its burden of proof with respect to the presumed or inferred fact by having satisfactorily established other facts. Thus, in effect they require the defendant to present some evidence contesting the otherwise presumed or inferred fact. * * * [citing *Barnes,* supra]. Since they shift the *production burden* to the defendant, these devices must satisfy certain due process requirements. * * * [citing authorities].

"In each of these cases, however, the ultimate burden of persuasion by proof beyond a reasonable doubt remained on the prosecution. * * * [citing authorities]." *Mullaney v. Wilbur,* 421 U.S. 684, 703, 95 S.Ct. 1881, 1891–1892, 44 L.Ed.2d 508 n. 31 (1975). (Emphasis supplied).

*Barnes v. United States,* 412 U.S. at 846, 93 S.Ct. at 2363, 37 L.Ed.2d at 387, n. 11, has this statement:

"It is true that the practical effect of instructing the jury on the inference arising from unexplained possession of recently stolen property is to shift the burden of going forward with evidence to the defendant. If the Government proves possession and nothing more, this evidence remains unexplained unless the defendant introduces evidence, since ordinarily the Government's evidence will not provide an explanation of his possession consistent with innocence. In *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), the Court stated that the burden of going forward may not be freely shifted to the defendant. See also *Leary v. United States,* 395 U.S. 6, 44–45, 89 S.Ct. 1532, 1552, 23 L.Ed.2d 57 (1969). *Tot* held, however, that where there is a 'rational connection' between the facts proved and the fact presumed or inferred, it is permissible to shift the burden of going forward to the defendant. Where an inference satisfies the reasonable-doubt standard, as in the present case, there will certainly be a rational connection between the fact presumed or inferred (in this case, knowledge) and the facts the Government must prove in order to shift the burden of going forward (possession of recently stolen property)."

It is therefore apparent a shift of the "production" burden is not per se unconstitutional so long as the aforementioned due process requirements are paid proper homage. Less apparent, however, is just what the Supreme Court has mandated in this regard. As expressed, *Tot* held there must be a "rational connection" between the fact proved (possession) and the fact inferred (defendant broke and entered). 319 U.S. at 467, 63 S.Ct. at 1245, 87 L.Ed. at 1524.

In *Leary v. United States,* 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57, 82, the Court declared:

"The upshot of *Tot, Gainey* [*United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965)], and *Romano* [*United States v. Romano,* 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965)] is, we think, that a criminal statutory presumption must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is *more likely than not* to flow from the proved fact on which it is made to depend." (Emphasis supplied).

The Ninth Circuit Court of Appeals, in *United States v. Black,* 512 F.2d 864, 869 (1975), recently observed:

"In *Turner* [*Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970)] and *Barnes,* the Court reaffirmed that position but expressly declined to decide the issue, left open in *Leary* (see 395 U.S. at 36 n. 64, 89 S.Ct. 1532), of whether or not a presumed fact in a criminal case must follow beyond a reasonable doubt from the fact proved, or whether it is sufficient that the presumed fact follow more likely than not; in both cases the Court decided that the attacked presumptions satisfied the more stringent standard."

Concerning these standards the *Barnes* Court did point out, however: "To the extent that the 'rational connection,' 'more likely than not,' and 'reasonable doubt' standards bear ambiguous relationships to one another, the ambiguity is traceable in large part to variations in language and focus rather than to differences of substance. What has been established by the cases, however, is at least this: that if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process." 412 U.S. at 843, 93 S.Ct. at 2361–2362, 37 L.Ed.2d at 386.

*State v. Mays,* 204 N.W.2d 862 was filed February 13, 1973. The opinion in *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380, was decided June 18 of the same year. *Mays* did not reach the question of the standard to be applied as given in *Barnes.* *State v. Thornburgh,* 220 N.W.2d 579 (Iowa 1974), cited *Barnes* as support for the court's position. However, the opinion did not specify which of the *due process* standards discussed in *Barnes* the court was applying in reaching its conclusion.

As pointed out, defendant was charged under section 708.8, The Code, which provides in part pertinent here:

"Other breakings and enterings. If any person, with intent to commit any public offense, * * * break and enter any * * * building in which any goods, merchandise, or valuable things are kept for use, sale, or deposit, he shall be imprisoned in the penitentiary * * *."

The trial court in instruction 9 told the jury that before defendant could be convicted of the crime of breaking and entering as charged the State must establish beyond a reasonable doubt each and all of the following propositions:

"1. The said defendant did break and enter a building owned and occupied by Clifford Dalbey in which goods, merchandise or valuable things were kept for use or sale;

"2. That said defendant's breaking and entering was done with the specific intent to commit a public offense, to-wit, larceny; and

"3. That said offense was committed in Hamilton County, Iowa, on or about January 25, 1975, or in any event within three years of the date of the filing of the Information, which Information was filed on February 3, 1975."

Under the foregoing instruction a breaking and entering of the Clifford Dalbey filling station was one of the essential elements of the crime charged.

The Court in *In Re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375, "explicitly * * * [held] that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In other words, before it can secure a conviction the State must demonstrate to the jury beyond a reasonable doubt each essential element of the alleged offense. Any lesser standard would deny due process. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508; *State v. Monroe,* 236 N.W.2d 24, 33 (Iowa 1975); *State v. Gray,* 216 N.W.2d 306, 307 (Iowa 1974); *State v. Kittelson,* 164 N.W.2d 157, 162 (Iowa 1969); *State v. McNamara,* 252 Iowa 19, 26, 104 N.W.2d 568, 572.

Since the State must prove every element of a crime beyond a reasonable doubt, the problem facing us here is whether the inference set forth in instruction 12 satisfies that standard. Specifically, does the presumed fact defendant committed the breaking and entering follow beyond a reasonable doubt from existence of the proved fact defendant possessed recently stolen property?

In 13 Am.Jur.2d, Burglary, section 54, pages 355–356, is this statement:

"Mere proof of possession of property recently stolen during the commission of a burglary does not raise a *presumption of guilt as a matter of law.* But in some jurisdictions proof of recent possession of the fruits of a burglary is regarded as presumptive or prima facie evidence of guilt of the burglary. In others it is not.

"It has been said that the fact of possession is evidence of guilt upon which a conviction may properly be returned, unless other facts or circumstances in the case are such that, notwithstanding the recent possession, the jury still entertains a reasonable doubt of the defendant's participation in the burglary, and it is in this sense that the words 'presumption' or 'prima facie evidence' must be understood when employed in this connection. Thus the term 'presumption of guilt' must be understood as something which authorizes but does not require conviction. * * * The inference is strong or weak according to the character of the property, the nature of the possession, and its proximity to the time of the theft. In other words, proof of possession is a circumstance which should be left to the jury, with instructions to give it such weight as they think it entitled to, when considered in connection with all the other evidence, in determining the guilt or innocence of the defendant." (Emphasis supplied).

The authorities are divided on the question whether a defendant's possession of recently stolen property is sufficient evidence in and of itself upon which to base a conviction for burglary.

It is at the outset clear the evidence in this case could convince the rational juror there was a breaking and entering as well as larceny of property committed at the same time, i. e., the burglary and larceny were part of the same transaction, and defendant was found shortly thereafter in possession of the stolen goods. Under this state of the record, some jurisdictions would allow the jury to convict. In *United States v. Johnson,* 140 U.S.App.D.C. 54, 433 F.2d 1160, 1167–1169 (1970), the Circuit Court stated:

" * * * Before the jury may resort to the inference, it must first find that the Government has proved beyond a reasonable doubt every essential element of the corpus delicti. The jury must then find, likewise beyond a reasonable doubt, that in the commission of the offense property was stolen and that recently thereafter the accused was caught with it. Even if those findings are made, the inference is forbid-

den if the accused's possession of the stolen property is satisfactorily explained by other circumstances shown by the evidence. Very importantly, the only inference ever permitted is that the accused is the thief, and even that deduction the jury is left free to reject although the possession is unsatisfactorily justified, or indeed is totally unelucidated.

" * * *

"In our view, the rule of inference under consideration, competently invoked, passes the tests both of more-likely-than-not and reasonable doubt. The facts the establishment of which preconditions utilization of the rule themselves warrant the deduction that the possessor of lately stolen property came by it only in consequence of the theft. The rule thus refines an aspect of the law of circumstantial evidence simply by describing an optional significance the jury is already at liberty to ascribe to the foundation facts. We are not persuaded that due process is offended by the expression of a principle 'which [does] no more than "accord to the evidence, if unexplained, its natural probative force." ' [Quoting from *United States v. Gainey,* 380 U.S. 63, 71, 85 S.Ct. 754, 759, 13 L.Ed.2d 658 (1965), which quotes *McNamara v. Henkel,* 226 U.S. 520, 525, 33 S.Ct. 146, 57 L.Ed. 330 (1913)].

" * * * We hold that the link between proof of unexplained possession of recently stolen property and the allowable deduction as to who stole it measures up to the mark, and supplies all the nexus that due process demands." See also *United States v. Carter,* 173 U.S.App.D.C. 54, 522 F.2d 666, 678–679 (1975).

The Idaho court has noted it is well settled in that jurisdiction " * * * that the unexplained possession of recently stolen property raises an inference of guilt and may be enough by itself to justify a conviction of burglary.

" ' * * * ' 

" * * * This rule is also supported by a majority of the other jurisdictions. * * * [citing authorities]." *State v. Ponthier,* 92 Idaho 704, 449 P.2d 364, 365.

In *People v. McClendon,* 533 P.2d 923, 924 (Colo.1975), the Colorado court, sitting en banc, approved the following instruction:

" 'The exclusive, unexplained possession of stolen property recently after a burglary serves to create an inference or incriminating circumstance that the Defendant stole such property and that such evidence, if established beyond a reasonable doubt, is sufficient in and of itself to justify a verdict of guilty in the absence of an explanation derived from the evidence in the case raising a reasonable doubt as to his guilt.' "

The Delaware court in *Laubacher v. State,* 306 A.2d 728, 729 (1973), noted:

" * * * Under the totality of the circumstances here, the evidence unquestionably warrants the conclusion that, at the time of the arrest, the defendant had sole possession, i. e., conscious dominion and control, over the recently stolen property. That conclusion, without more, supports the presumption or inference of guilt and the convictions of larceny and burglary."

In *Lambiotte v. State,* 17 Md.App. 545, 303 A.2d 163, 168–169, the court declared that "whatever the rule in other jurisdictions, it is settled in Maryland that the exclusive possession of recently stolen property 'permits the drawing of an inference of fact strong enough to sustain a conviction that the possessor was the thief, or, if the circumstances revealed by the testimony so indicate, that he was the receiver of stolen goods.' * * * [citing authority]. This Court frequently has applied the rule that a person found in possession of property recently stolen in a burglary may be inferred to be the burglar. * * * [citing authorities]. Therefore, if the State had shown that the two checks which the appellant cashed were stolen at the time Hope's Windows was broken into and office equipment taken, we would have no hesitancy in again applying the rule that appellant's exclusive possession of stolen property soon after it had been stolen was *prima facie* evidence of guilt and cast upon him the burden of explaining such possession, and if unexplained, would be sufficient in itself to sustain his conviction for storehouse break-

ing and stealing. * * * [citing authority]."

Illinois is another state in which the inference alone is adequate. " 'Evidence of recent, exclusive and unexplained possession of stolen property by an accused, either singly or jointly with others, may, of itself, raise an inference of guilt absent other facts and circumstances which leave * * a reasonable doubt as to guilt.' " *People v. Bivens,* 123 Ill.App.2d 79, 259 N.E.2d 607, 609, quoting from *People v. Reynolds,* 27 Ill.2d 523, 525–526, 190 N.E.2d 301, 302.

These cases would specifically support a finding by this court possession of recently stolen property is sufficient in and of itself to convict defendant of breaking and entering. There is rather substantial authority to the contrary, however. In *United States v. Tavoularis,* 515 F.2d 1070, 1075, n. 11 (2 Cir. 1975), the court discussed the effect of corroborating evidence upon the determination whether the inference meets the reasonable doubt standard.

" * * * It may well be that a factor relevant to the determination of that issue in any particular case would be whether, on the one hand, the inference was the *only* evidence tending to prove an essential element of the crime, or the jury was told that the inference *alone* was sufficient to establish such an element, or, on the other hand, the inference was but one bit of circumstantial evidence among many." (Emphasis in the original).

The Eighth Circuit Court of Appeals has said:

"This court has for many years approved the use of the instruction on possession of recently stolen property as a circumstance to infer participation in the theft. * * * [citing authorities]. * * * Since the possession relates to the theft itself, guilt may be inferred for the more aggravated crime associated with the theft, * * *." *United States v. Jones,* 418 F.2d 818, 821 (1969).

The *Jones* court, however, went on to note that "most modern authorities" hold or imply " * * * that the inference from recent possession of stolen property must in some way be corroborated by other circumstantial factors as to the crime charged to sustain a finding of sufficiency of evidence. * * * [citing authorities]." 418 F.2d at 823. The facts in *Jones* could have supported both the inference of theft and the lesser charge of "possession of stolen property knowing the same to be stolen," and thus, since " * * * one inference is as consistent as the other, there exists a compelling evidential need for corroboration of the inference charged. * * * [citing authorities]." 418 F.2d at 824.

The Montana court has held it is well settled in that state "that the mere possession of stolen property, by itself, is insufficient to justify a conviction of burglary. If the State establishes the corpus delicti of burglary and also proves that the defendant was in exclusive possession of the stolen articles shortly after the burglary had occurred, a permissible inference that the defendant had committed the burglary would arise, even though direct evidence of the entry by the defendant was nonexistent. However, the fact of possession must be corroborated by other incriminating circumstances in order to justify the guilty verdict. * * * [citing authorities]." *State v. Pepperling,* 533 P.2d 283, 286 (Mont. 1974).

In *Jones v. State,* 468 P.2d 805, 807 (Okl. Cr.1970), it was declared:

" 'The mere possession of property recently stolen is not sufficient to convict the possessor of Larceny or Burglary of it, but when the fact is supplemented with other facts inconsistent with the idea that the possession is honest, it then becomes a question of fact for the jury to pass upon the guilt or innocence of the defendant.' "

Likewise, *State v. Cook,* 187 Neb. 788, 194 N.W.2d 218, 220, has this statement:

" * * * In *State v. Solano,* 181 Neb. 716, 150 N.W.2d 585, we held that while mere possession of stolen property standing alone is insufficient to justify a conviction of burglary, such possession of property is a circumstance which, taken in connection with other incriminating evidence in the

case, may be considered by the jury in determining the question of the guilt or innocence of a defendant so charged."

The Indiana court has stated that "unexplained exclusive possession of recently stolen goods may constitute a circumstance from which the trier of fact may draw an inference of guilt, * * * [citing authority]; and may support a conviction of second degree burglary *where other evidence is adduced to link defendant with the crime,* * * * [citing authority]." *Giles v. State,* 320 N.E.2d 806, 808 (Ind.App.1974). (Emphasis supplied).

Similarly, the Washington court has held the " * * * mere possession of stolen goods, unaccompanied by other evidence of guilt, is not prima facie evidence of burglary; but the rule is otherwise where there is indicatory evidence on collateral matters." *State v. Garske,* 74 Wash.2d 901, 447 P.2d 167, 168 (1968).

Just what corroborative evidence is required is often left unclear. In Arizona, only " * * * slight corroborative proof of other inculpatory circumstances are [sic, is] needed to warrant a conviction. * * * [citing authorities]." *State v. Loggins,* 13 Ariz.App. 577, 479 P.2d 724, 726.

In *Commonwealth v. Simmons,* 233 Pa. Super. 547, 336 A.2d 624, the court held a conviction of burglary cannot be rested solely upon the inference from recent possession, but "all of the evidence of surrounding circumstances must be considered in arriving at a finding that the possessor is the thief, and the conviction may be based on circumstantial evidence alone, provided the evidence meets the standard of proof beyond a reasonable doubt. * * * [citing authority]." 336 A.2d at 630. The *Simmons* court went on to state:

"The evidence of surrounding circumstances that one should consider in appraising the evidence of possession, will be different in every case, and no description of it can be more than suggestive. 'Some of the significant circumstances can be the appellant's conduct; the appellant's relationship to the victim; the elapsed time between the appellant's possession and the theft; the

situs of the theft and the situs of the possession; the kind of property; the quantity of property; and the identifying characteristics of the property.' " 336 A.2d at 629–630.

In the same vein, the Virginia court states:

"Unexplained or falsely explained possession of goods recently stolen in a burglary, coupled with other inculpatory circumstances, will sustain a conviction of burglary where the sufficiency of the evidence is challenged. * * * [citing authority]. Therefore, when the Commonwealth's evidence proves a breaking and entering, a theft of goods, and justifies the inference that both offenses were committed at the same time, by the same person, as a part of the same criminal enterprise, and if the evidence proves further that the stolen goods are found soon thereafter in the possession of the accused, the Commonwealth has made a prima facie case that the accused broke and entered. * * * [citing authority]." *Schaum v. Commonwealth,* 215 Va. 498, 211 S.E.2d 73, 75–76.

Finally, precedent in Michigan distinguishes the weight of the inference as it applies between the crimes of larceny and burglary. " 'This court is committed to the doctrine that the possession of stolen property, standing alone, is not even *prima facie* evidence that the person in whose possession it was found committed the burglary.

" ' * * *

" 'The unexplained possession of property recently stolen is *prima facie* evidence of larceny (* * * citing authority), but, unaccompanied by other facts or circumstances indicating guilt, will not sustain a conviction for burglary.' " *People v. Hutton,* 50 Mich.App. 351, 213 N.W.2d 320, 323.

The conviction for burglary in *Hutton* was upheld due to defendant's false story, the possession's close proximity to the time of the break in, and defendant's evasive action. There was no direct evidence linking defendant to commission of the burglary. In other words, circumstances surrounding defendant's possession as well as

his incriminatory conduct were held sufficient to convict him of burglary.

The challenged instruction 12 informed the jury:

"If you find from the evidence beyond a reasonable doubt:

"1. That property claimed by the state to be stolen was in fact stolen;

"2. That the defendants, or either of them, thereafter had possession of said property; and

"3. That said possession was recent, then you may, but are not required to, infer that defendants, or one of them, did in fact break and enter the building in question.

"What is recent possession cannot be precisely defined. The nature of the property, its ease of transferability, and all other circumstances shown are to be considered as bearing upon whether the interval between the time of alleged theft and defendant's alleged possession was so short as to render it reasonably certain that there could have been no intermediate change of possession.

"It is important that you keep in mind that it is your exclusive province as jurors to determine whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits you to draw from possession of recently stolen property, and you are not required to make this inference. If any possession a defendant may have had of recently stolen property is consistent with innocence, or if you entertain reasonable doubt of guilt, then you must acquit the defendant."

It is apparent the court instructed the jury it should consider what these last three authorities in effect require. In this regard, the instruction did not state mere possession raises a presumption of guilt or is prima facie evidence thereof. Rather the jury was told it was their province to determine whether the facts and circumstances shown by the evidence in the case warranted any inference which the law permitted the jury to draw from the possession of recently stolen property. The jury was authorized but not required to return a guilty verdict if defendant's possession of property

recently stolen, *considered in connection with the surrounding circumstances,* was such as to be convincing beyond a reasonable doubt defendant committed the breaking and entering.

■ In our opinion bare proof of possession of property recently stolen does not permit, as a matter of law, the rational juror to conclude beyond a reasonable doubt the possessor committed the break in since possession alone could well support an inference of guilt for other crimes besides burglary. Consequently, where a party in possession of recently stolen property is charged with burglary there must be evidence in the record relating to the surrounding circumstances for the jury to consider in determining whether the evidence warrants a finding beyond a reasonable doubt of the presumed fact defendant committed the breaking and entering from the proved fact he possessed recently stolen property.

■ Because the evidence will of necessity be circumstantial it must therefore "* * * be entirely consistent with defendant's guilt and wholly inconsistent with any rational hypothesis of defendant's innocence and so convincing as to exclude a reasonable doubt that defendant was guilty of the offense charged." *State v. Jellema,* 206 N.W.2d 679, 681 (Iowa 1973).

■ It is evident each case will be considered in light of its own peculiar factual setting in making the determination whether the standard of reasonable doubt entailed in the very concept of due process has been satisfied. Thus, the question is whether the facts of this case, viewed in the light most favorable to the verdict, could convince a rational juror beyond a reasonable doubt defendant was guilty of breaking and entering.

■ As stated, it could reasonably be concluded larceny of property was effected concurrently with the break in. Within a few hours of the theft defendant was found in possession of goods positively identified as those stolen. Shortly before his arrest,

defendant's car under most suspicious circumstances was observed by the police sneaking from the scene of a tampered with Pepsi Cola vending machine. The vehicle's headlights were unilluminated despite the fact it was 4:00 a. m. Finally, a crowbar was discovered in the car which was very probably used in the attempt to pry open the soft drink machine. Also significant in relation to this crowbar is the rule of law permitting the admission of burglary tools as bearing upon intent. The availability to the accused of tools or instruments of a type that could be used as a means of committing a break in or as showing preparation for the commission thereof is relevant on that issue. See *State v. LaMar*, 260 Iowa 957, 963, 151 N.W.2d 496, 499.

■ A rational juror could find defendant had possession of goods recently stolen during a break in of the Dalbey service station. From this fact as well as from the evidence of surrounding circumstances, that juror could reasonably conclude defendant, beyond a reasonable doubt, was the burglar.

The inference was not unconstitutionally invoked in this case.

III. Defendant also contends the trial court erred in failing to direct the verdict in his favor—motions for which having been tendered at the end of the State's case as well as at the close of all evidence. It is argued the circumstantial evidence "did not exclude every other reasonable hypothesis for the commission of the offense alleged," as possession only was proved. Thus, defendant queries: "Was possession wholly inconsistent with any rational hypothesis of innocence?"

In *State v. Dahlstrom*, 224 N.W.2d 443, 447–448 (Iowa 1974), the rules concerning grant of a directed verdict motion were discussed:

■ "In a criminal action the cause should be submitted to the jury and the court should not direct a verdict of acquittal if there is any substantial evidence reasonably tending to support the charge. * * * [citing authorities].

■ "To sustain the overruling of a motion for directed verdict, 'any evidence, circumstantial or direct, must be sufficient to raise a fair inference of guilt.' There must be more than 'a suspicion, speculation or conjecture. * * * [citing authority].' *State v. Williams*, 179 N.W.2d 756, 758 (Iowa 1970).

■ "In making a determination as to the propriety of the court's ruling on a motion for directed verdict in a criminal case this court views the evidence in the light most favorable to the state regardless of whether it is contradicted and every legitimate inference that may be fairly and reasonably deducted therefrom must be carried to the aid of the evidence. * * * [citing authority]."

Much is made of the fact "the vital link, placing the defendant at the scene, was not supplied." It is also pointed out some of the items allegedly contained originally in the box (exhibit 1) at the service station were not found in defendant's car. (Furthermore, some of the things found in the car were not included on the invoice list from G & K Wholesale, although Mr. Dalbey identified the items as like those carried in the station's inventory). The argument is thus tendered defendant, due to the time for a trip from Des Moines to Ellsworth and back to Ankeny, had "little or no time * * * to discard several items reported stolen * * *."

■ Viewing the fact situation overall, including the testimony defendant had played cards until 1:00 a. m., the rational juror, it would seem, could well reach the conclusion the facts were inconsistent with any reasonable hypothesis of innocence. Stated differently, one cannot say a reasonable doubt existed as a matter of law. See *State v. Jellema*, 206 N.W.2d 679, 682 (Iowa 1973), where the court held a reasonable doubt had arisen as a matter of law.

Defendant's motion for directed verdict was properly overruled.

IV. As his final argument in support of reversal defendant asserts the items admitted as exhibit 1 were not identified as those

stolen beyond a reasonable doubt. It is also argued "custodial foundation was not sufficiently established."

Defendant's objection to the admission of exhibit 1 rested "on the basis of no proper foundation of identification by the witness from whom it was supposedly taken." Defendant, at the end of the State's case, objected "no proper foundation" had been laid for admission of the exhibit.

Notwithstanding any question as to the sufficiency of those objections to preserve error for review, it would appear admission of the contents of exhibit 1 did not constitute error. The trial court excluded the Certs, Life Savers, Rolaids and Milky Way candy bars from the exhibit. There was testimony concerning chain of possession from the time the articles were removed from defendant's car up to the time of trial.

In this connection, "it is not essential for admissibility that the State negative the possibility of tampering or substitution absolutely. It is sufficient to establish that it is reasonably probable tampering or substitution did not occur. *West v. United States*, 359 F.2d 50, 55 (8 Cir. 1966); McCormick on Evidence, supra, [§ 212, pp. 527–528 (Second Ed. 1972)]. Contrary speculation affects the weight of the evidence but not its admissibility. * * * [citing authorities].

" * * *

"Trial court discretion is involved. 'The trial judge's determination that the showing as to identification and nature of contents is sufficient to warrant reception of an article in evidence may not be overturned except for a clear abuse of discretion.' * * * [citing authorities]." *State v. Lunsford,* 204 N.W.2d 613, 617 (Iowa 1973). See also *State v. Quanrude,* 222 N.W.2d 467, 471 (Iowa 1974).

Likewise, since many of the items were common goods such as cigarettes and candy, the following statement is relevant:

" * * * It is well settled ' * * [t]he possession of goods of the *same kind* as the general class of goods from which

the taking was done is receivable, even though the specific quantity or any quantity of the general mass cannot be identified or discovered or shown to be missing. * * *.' (Emphasis in original). I Wigmore on Evidence (Third Ed.), § 152, pages 598, 599." *State v. Davis,* 229 N.W.2d 249, 251–252 (Iowa 1975).

In light of the pronouncements in the foregoing authorities the objections were without merit. The rational juror could reasonably conclude beyond a reasonable doubt the items admitted into evidence were those stolen from the service station.

The case is—Affirmed.

RAWLINGS, REES and McCORMICK, JJ., concur.

UHLENHOPP, J., MOORE, C. J., and LeGRAND, REYNOLDSON and HARRIS, JJ., concur specially.

LeGRAND, Justice (concurring specially).

I concur in the result reached by the majority but disagree with the views expressed in Division II thereof.

After citing two lines of respectable authority concerning the permissible inference arising in a burglary prosecution from possession of recently stolen property the majority, in my opinion, adopts the wrong one.

It seems specious to say one in possession of recently stolen property taken in a burglary may just as easily have acquired it in some other way. That same rationale, if valid at all, is applicable to *all* inferences related to possession of recently stolen property, whether a burglary is involved or not. I also disagree with the majority's statement the real problem is whether the presumed fact defendant committed the breaking and entering follows from existence of the proved fact defendant possessed recently stolen property. In my opinion the real problem, rather, is whether such "presumed fact" follows from possession of recently stolen property *feloniously taken during the commission of the burglary with which defendant is charged.*

I believe there is a sufficient rational connection between such possession and the

established burglary to permit the inference defendant committed the burglary. If unexplained, such evidence should be sufficient to support a guilty verdict. .

As already mentioned, there is authority for both rules concerning the effect of the inference we are here concerned with. In *State v. Mays,* 204 N.W.2d 862, 865 (Iowa 1973) we seemingly settled this question. Relying on a number of other cases decided by this court, we there held possession of recently stolen property when the theft took place in connection with a burglary is sufficient to warrant a conviction of breaking and entering.

The majority says *Mays* did not state whether the inference must be such as to convince the jury beyond a reasonable doubt or whether it is enough if the presumed fact follows the inference as more likely than not. This is the due process problem raised in *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). We recognized, but did not decide, the question in *State v. Thornburgh,* 220 N.W.2d 579, 585 (Iowa 1974).

I believe we should follow the more-likely-than-not rule. The general instruction that the jury must find defendant guilty beyond a reasonable doubt is definitive of the State's duty. There is no sound reason why the inference must itself be independently established beyond a reasonable doubt. I recognize the cases (and the majority) speak of possession "alone." There is no such thing as possession alone.

In another area, in discussing guest statute claims, we said there is no such thing as speed alone. It is always accompanied by other circumstances. *See Winkler v. Patten,* 175 N.W.2d 126, 129 (Iowa 1970); *Lewis v. Baker,* 251 Iowa 1173, 1176, 104 N.W.2d 575, 577 (1960).

I think that same reasoning is applicable here. Possession doesn't occur in a vacuum. It is always attended by circumstances of time, place, and details of incidental conduct.

I take this to be the real holding in at least one of the cases cited by the majority.

*See Schaum v. Commonwealth,* 215 Va. 498, 211 S.E.2d 73, 75–76 (1975).

I would hold, along with the authorities which the majority cites to that effect, that possession of recently stolen property permits an inference defendant committed the burglary during which the property was stolen; that the inference need not follow beyond a reasonable doubt; and that such possession, if unexplained, would support a finding defendant committed the break-in at which the property was taken.

Since the majority reaches that conclusion on other grounds, I concur in the result.

MOORE, C. J., and REYNOLDSON, J., join in this special concurrence.

UHLENHOPP, Justice (concurring specially).

Where the evidence shows that property was recently stolen in a breaking and entering and further shows the defendant to be in possession of such recently stolen property, I think the inference which arises that the defendant is the guilty person is sufficient to permit the jury to find him guilty of the breaking and entering beyond a reasonable doubt.

MOORE, C. J., and REYNOLDSON and HARRIS, JJ., join in this special concurrence.